**In re ESTATE OF GREALIS; Robert S. Bullock, Appellant.**

**In re Estate of Irma Sams; Leonard L. McCants, Appellant.**

**In re Mary Nazarczuk; John A. Whitney, Appellant.**

Nos. 03–PR–963, 03–PR–965, 04–PR–169.

District of Columbia Court of Appeals.

Submitted May 26, 2006.

Decided July 13, 2006.

Nicholas D. Ward, Washington, DC, filed a brief for appellants.

Maria Nazarczuk, filed a brief pro se.

Christopher J. Herrling, Daniel S. Volchok, and Craig Goldblatt, Washington, DC, filed a brief as amicus curiae.*

Before FARRELL and REID, Associate Judges, and KERN, Senior Judge.

---

* The court originally removed these appeals from the calendar and requested Christopher

J. Herrling, a member of the Bar, to file a brief as *amicus curiae*. We express our gratitude to Mr. Herrling and the members or associates of Wilmer Hale LLP for their assistance in resolving the issues presented.

FARRELL, Associate Judge:

Before us are three consolidated appeals by attorneys retained to represent persons in the Probate Division of the Superior Court. Although factually different, each appeal presents the question of whether approval by the court is required before an attorney may receive payment of attorney's fees for representation in guardianship or other protective proceedings where the fees are paid, not from the ward's estate, but from personal funds of the guardianship petitioner or a third party.

In each case, the petitioners had retained an attorney and paid him with their own funds to help prepare and submit a petition for a guardianship and/or conservatorship, subsequently granted. In each case, the Superior Court ordered the fee payments returned (and referred the attorney to Bar Counsel), concluding that receipt of such fees without prior court approval was improper although the fees had not been paid out of estate funds. We hold, to the contrary, that when attorney's fees are not paid from the estate of a protected individual (or from the court's Guardianship Fund) but rather from private funds, no statutory basis exists for requiring court approval and the judicial intrusion that entails into what ultimately is a private contractual arrangement. Therefore, we reverse the orders requiring repayment of the attorney's fees in these cases.

## I.

In *In re Grealis* (No. 03–PR–963), siblings Jeanne and William Grealis were appointed co-guardians for their mother, and Jeanne was appointed conservator. Using his own funds, William Grealis paid a $5000 retainer to appellant Robert S. Bullock, a lawyer the Grealis siblings had hired to assist them with their guardianship petition and related proceedings. When Bullock later disclosed the payment on his petition to the Superior Court for reimbursement of the balance of his fees and expenses from the ward's estate, the Register of Wills wrote to the judge handling the matter that, "[g]enerally, in cases where fees are paid without prior authorization, the Court directs that the estate be repaid and that an order of reference to the Office of Bar Counsel be issued." Agreeing with this advice, the judge ordered Bullock to return the retainer and referred him to Bar Counsel for possible discipline. After Bullock returned the retainer, another judge approved payment of his fees from the court's Guardianship Fund, although at the lower rates applicable to such payments.[1]

Similarly, in *In re Sams* (No. 03–PR–965), Dolores Sams and her sister were appointed co-guardians for their mother. Sams had previously retained attorney-appellant Leonard L. McCants to represent her in the guardianship proceeding, paying him a $250 consultation fee at their initial meeting and a $2,250 retainer two weeks later. When Sams later sought reimbursement for those payments from the estate, the Register of Wills again noted to the court that they were "paid without prior court approval" and "question[ed] whether the Court will deny reimbursement for the $2,500.00 in legal fees paid without court approval and refer the matter to the Bar Counsel accordingly." The judge handling the matter denied reimbursement and ordered McCants to repay

1. Bar Counsel, meanwhile, dismissed the referral after noting that the retainer had been paid with non-estate funds and that "[t]here is nothing in [the relevant statute] that prevents a family member from retaining the services of an attorney to protect the interest of the ward, or paying him to do so by way of a retainer."

Sams the $2,500, while referring him to Bar Counsel.[2]

Finally, in *In re Nazarczuk* (No. 04–PR–169), Maria Nazarczuk retained attorney-appellant John A. Whitney to represent her in an effort to be appointed guardian and conservator for her mother, paying him with funds of her own. When she sought partial reimbursement from the court for these payments, the Register of Wills again opined that "payment of attorney fees from the personal funds of a client (regardless of whether the client intends to seek reimbursement) gives an impression of one circumventing the law in Probate matters[,] which require Court approval of legal fees." After holding two hearings, the judge handling the matter concluded that Whitney "inten[ded] to (1) avoid obtaining court approval prior to receiving said fees in accordance with Super.Ct. Prob. R. 308 and (2) avoid the scrutiny of the Court's reasonableness standard." The court referred Whitney to Bar Counsel and ordered him to return to Nazarczuk the $6,344.06 in fees she had paid him.[3]

## II.

In 1986, the Council of the District of Columbia enacted the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act, D.C. Law 6–204, D.C.Code §§ 21–2001 *et seq.* (2001) (the Act or the 1986 Act), which established a comprehensive scheme governing guardianship and other protective arrangements. *See generally In re Orshansky*, 804 A.2d 1077 (D.C.2002). Under the Act, the Superior Court may appoint a conservator or guardian for an "incapacitated individual," defined as:

an adult whose ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that he or she lacks the capacity to manage all or some of his or her financial resources or to meet all or some essential requirements for his or her physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian or conservator.

D.C.Code § 21–2011(11). A conservator "manage[s] the estate of a protected individual," *id.* § 21–2011(3), while a guardian "is responsible for care, custody, and control of the ward." *Id.* § 21–2047. A person may seek appointment of a conservator or guardian for herself or for another person through a petition to the Superior Court. *See id.* §§ 21–2041 (guardian); 21–2052 (conservator).

The Act authorizes "compensation for services rendered" to persons who perform services in connection with a guardianship or other protective proceeding. Section 21–2060(a) provides in relevant part:

As approved by order of the court, any visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement.... Compensation shall be paid from the estate of the ward or person or, if the estate of the ward or person will be depleted by payouts made under this subsection, from a fund established by the District.[4]

2. Bar Counsel later dismissed this disciplinary matter as well.

3. Bar Counsel dismissed the referral, again concluding that no statute requires court approval of attorney's fees paid from personal funds of the petitioner.

4. Subsection (b) provides:

This section is implemented by Super. Ct. Prob. R. 308, which originally provided, as relevant, that "[a]ny visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian is entitled to reasonable compensation for services rendered in an intervention proceeding. Compensation must be approved by order of the Court." Super. Ct. Prob. R. 308(a) (1995). In 2002, the second sentence of the rule was amended to provide that "[c]ompensation paid from the assets of the subject of the proceeding, protected individual or ward, or from the Guardianship Fund, must be approved by Order of the Court before being paid." A comment to the amended rule states that the rule "is intended to implement the public policy of protecting incapacitated adults, and therefore no compensation may be paid from the assets of the subject without first being approved by the Court." *Id.* cmt.

On appeal, the respective attorneys argue that the trial court erred in ruling that the attorney's fees paid to them from personal funds of the petitioners, and not from the ward's estate or the Guardianship Fund, required prior court approval. We agree. Neither the language nor the purpose of § 21–2060 or Rule 308—the two potential sources of authority for the trial court's orders—suggests that court authorization is required before attorneys are paid out of personal or private funds.[5]

The first and third sentences of § 21–2060(a), quoted earlier, each refer to "compensation": the first specifies the circumstances that create an entitlement to it and provides that court approval is required,

There is established within the General Fund of the District of Columbia a separate account to be known as the "Guardianship Fund" ("Fund") and to be administered by the court. There is authorized to be appropriated funds necessary for the administration of this section.

while the third states the sources from which compensation will be paid. The Act thus ties approval of the court to the source of the payment. In particular, it suggests that the "compensation" that individuals are—with court approval—entitled to is the same "compensation" paid from the sources enumerated later. By contrast, it says nothing explicit about payments to attorneys from other sources, an omission which strongly suggests that the statute was not meant to interfere with private arrangements between lawyers and their clients in regard to payment. That reading also accords with the underlying purpose of the Act to "manag[e] and protect[ ] the estates of protected individuals." Section 21–2001(b)(2).

The legislative history reinforces the meaning suggested by the text. In its report on the bill that became the 1986 Act, the Judiciary Committee of the Council stated, in the section-by-section analysis, that the new § 21–2060 "[r]equires reasonable compensation, as directed by the court, for any … attorney … for services rendered in a protective proceeding. The compensation shall come from the estate itself, or from a fund established by the District of Columbia for that purpose." Report of the Council of the District of Columbia, Committee on the Judiciary, on Bill 6–7 (June 18, 1986) ("Report"). As with the statutory language, the use in each of these two sentences of the same word, "compensation," suggests that the two uses are related, the second defining the "compensation" that is to be "directed by the court."

**5.** "This court reviews the trial court's interpretation of a statute *de novo,*" *In re Estate of Sato,* 878 A.2d 1247, 1250 (D.C.2005); and its review of the interpretation of Super. Ct. Prob. R. 308 is likewise *de novo. See Ferguson v. United States,* 866 A.2d 54, 59 (D.C. 2005).

Other evidence in the history is consistent with this interpretation. The 1986 Act was "modeled after the 'Uniform Guardianship and Protective Proceedings Act' ... which was promulgated by the National Conference of Commissioners on Uniform State Laws in 1982." Report 2. Section 2–313 of the Uniform Act, and the original draft of § 21–2060 that closely tracked it, made clear that the compensation to which an individual who performs services in connection with a guardianship or other protective proceeding becomes entitled is compensation from the estate. Specifically, § 2–313 provided that "[i]f not otherwise compensated for services rendered, any visitor, attorney, physician, conservator, or special conservator appointed in a protective proceeding and any attorney whose services resulted in a protective order or ... an order that was beneficial to a protected person's estate is entitled to reasonable compensation from the estate." [6] That section thus stated the substance of the first and third sentences of § 21–2060, as enacted, in a single sentence, and in doing so demonstrated that it dealt only with compensation from the estate, leaving other sources of compensation unaddressed.

Section 21–2060 has been amended once since adoption of the 1986 Act, but the change does not affect the proper interpretation of the statute. In 1987, the Council passed and the Mayor signed the District of Columbia Guardianship and Protective Proceedings Amendment Act, D.C. Law 7–17 (the "1987 Act"). Although the 1987 Act made slight modifications to § 21–2060, those changes, as the committee's section-by-section analysis stated, simply "clarifie[d] that reimbursement expenditures shall be paid from the ward's estate pursuant to court order." [7] Indeed, the report provides another indication that § 21–2060 was not intended to apply to payment made with non-estate funds. Explaining the need for the delay in the effective date of the 1986 Act, the report listed some of the obligations that the Act imposes on the Superior Court. The first obligation listed is to "authorize payments to compensate the ... attorneys ... from the estate of the incapacitated individual and where the estate will be depleted by such payouts from a fund established by the District." 1987 Report 2. Plainly, the committee members who signed the 1987 report perceived § 21–2060 to require court approval only when compensation was paid with estate funds or from the Guardianship Fund.

Super. Ct. Prob. R. 308 likewise does not support the trial court's invalidation of fees paid from private funds. Most obvious in this regard is the current version of the rule, which by its terms states that only payments made with estate funds or from the Guardianship Fund require advance court approval.[8] While the prior

---

6. The first draft of § 21–2060 similarly provided:

If not otherwise compensated for services rendered, any visitor, attorney, examiner, conservator, or special conservator appointed in a protective proceeding and any attorney whose services resulted in a protective order or in an order that was beneficial to a protected individual's estate is entitled to reasonable compensation, as the court determines, from either the estate or a fund established by the District of Columbia if the estate will be depleted by payouts made under this section.

7. Report of the Council of the District of Columbia, Committee on the Judiciary, Bill 7–199 (April 15, 1987). The specific "purpose of [the 1987 Act was] to delay the effective date of the guardianship and protective proceedings provisions of the [1986 Act]." *Id.* at 2.

8. The payment at issue in *Grealis* was made after adoption of the current version on Rule

version lacked that express provision, it too cannot support the challenged rulings, for "the Superior Court may not adopt a rule which abridges any substantive right." *Haynes v. District of Columbia,* 503 A.2d 1219, 1223 (D.C.1986) (per curiam). Because § 21–2060 does not require approval of non-estate-fund payments, interpreting Rule 308 to require approval of payments from those funds would abridge the right of competent adults to enter into otherwise-lawful economic transactions with other competent adults by requiring prior court approval. Indeed, a reason for the 2002 amendment of the rule may have been precisely to clarify that the rule was not intended to expand the reach of the statute.

Underlying the trial court rulings in these cases appears to have been a concern, not with depletion of the ward's estate or the Guardianship Fund, but with overreaching or deception by attorneys who are paid retainers while falsely assuring the client that reimbursement will be available—as a matter of course, and without court inquiry into the reasonableness of the fees—from the estate or the Fund.[9] But, as *amicus* correctly points out, the court's interest in having clients not misled by their attorneys has no special resonance in guardianship and other protective cases; it is equally strong in all areas of the law. It thus provides no basis for heightened court oversight of the lawyer-client relationship in guardianship cases. Moreover, the interest that *is* unique to these cases—protecting incapacitated individuals and their estates—suffers no diminution from preclusion of court intervention in the private arrangements at issue here. All agree that court approval is required before compensation may be paid from estate funds; thus, regardless of the agreements between clients like Sams and Nazarczuk and their attorneys about fee payments, no reimbursement for such payments may be sought except by petition to the court and its review of the propriety and reasonableness of the fees requested.

On the other side of the ledger, adding a requirement that fees paid to attorneys from private funds receive advance court approval—besides having no support in the governing statute—would have undesirable consequences of the kind *amicus* cogently describes in its brief:

> First, it would impose additional burdens on the [S]uperior [C]ourt, which would be presented with and have to dispose of approval requests that would never have been filed otherwise because neither the attorney nor the client wanted to be paid from the estate or the Guardianship Fund. Second, it could lead attorneys to decline to take on cases involving small estates, for if a request for approval of fees from personal funds in such a case were denied, the attorney would only be entitled to receive payment from the Guardianship Fund, which involves relatively low rates. Third, it could lengthen significantly the amount of time between when the need for a guardian or conservator became apparent and the time when an appointment could be made: as noted, the [trial] court in *Sams* required repayment not only of the retainer that

---

308, while the payments at issue in the other two appeals were made before such adoption.

9. The record contains no evidence of such overreaching by any of the attorney-appellants here. Although the trial court in the *Nazarczuk* case expressed strong doubts about the candor of the attorney in dealing with his client, nothing relevant to deciding the related appeal depends on that issue. Indeed, in the end, it appears that the attorney merely informed the client, correctly, that reimbursement of the fees she had paid out of pocket would be possible or "permissib[le]."

[McCants] received, but also of the $250 he was paid for his initial consultation with Sams.... [A]ttorneys keen on not being referred to Bar Counsel might require anyone who sought to consult with them about a guardianship or other protective proceeding to wait until they had secured the court's approval to receive the consultation fee. In short, both attorneys' participation and the [S]uperior [C]ourt's role in guardianship and protective proceedings would become more burdensome, the process for appointment of guardians and conservators could become slower, and those seeking guardians or conservators for low-income individuals could find it harder to secure the assistance of counsel. The approach embraced by the [S]uperior [C]ourt thus seems to hinder rather than advance one of the stated objectives of the 1986 Act, namely to "[p]romote a speedy and efficient system for managing and protecting the estates of protected individuals so that assets may be preserved for application to the needs of protected individuals and their dependents." D.C.Code § 21–2001(b)(2).

## III.

For all of the reasons stated, the orders of the Superior Court requiring the attorneys in these cases to repay fees privately negotiated and paid from personal funds are

*Reversed.*