In re ESTATE OF Lizzie WILSON;

Paul D. Pearlstein, Appellant.

No. 05–PR–428.

District of Columbia Court of Appeals.

Nov. 1, 2007.

Paul D. Pearlstein, pro se (On Petition for Rehearing).

Before WASHINGTON, Chief Judge, REID, Associate Judge, and WAGNER, Senior Judge (On Petition for Rehearing).

BEFORE: *WASHINGTON, Chief Judge; FARRELL, RUIZ,*REID, GLICKMAN, KRAMER, FISHER, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges; * WAGNER, Senior Judge.

ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing or rehearing en banc, and the letter from counsel for appellee, it is

ORDERED by the merits division * that the petition for rehearing is granted as set forth in the opinion filed November 1, 2007, and that this court's opinion filed June 21, 2007, see 928 A.2d 638 (D.C.2007), is hereby vacated. It is

FURTHER ORDERED that the petition for rehearing en banc is denied as moot, without prejudice to the filing of a petition for rehearing en banc directed to the amended opinion issued November 1, 2007.

## ON PETITION FOR REHEARING

WASHINGTON, Chief Judge:

Appellant, Paul D. Pearlstein, appeals the trial court's order requiring him to pay to decedent's estate a portion of the attorney's fees paid to him by the estate's personal representative from her personal funds for services that he rendered in connection with real property belonging to the estate. Upon rehearing, we reverse and remand the case to the trial court with instructions to vacate the order imposing sanctions upon appellant.[1]

## I.

Lizzie Wilson died intestate on May 5, 1990. The primary asset of value in her estate was her home located at 30 New York Avenue, N.W., in the District of Columbia. The personal representative of decedent's estate ("the estate") sought to liquidate the residence, but due to a recalcitrant relative of the decedent who was residing in the home, had difficulty obtaining possession. The personal representative retained appellant, Paul D. Pearlstein ("appellant"), to assist her in acquiring possession of the property. The personal representative signed an agreement to pay the legal fees and personally guaranteed payment of the fees. Appellant, through the normal course of business, provided monthly billing statements to the personal representative. These billing statements were not requests for compensation, but were merely statements of the work performed and the value for those services. As explained in the retainer agreement, appellant would wait until completion of probate to collect his fee directly from the estate funds.

After successfully completing the assigned task, the personal representative discharged appellant as counsel. The personal representative sent appellant a check in the amount of $6,937.15 and stated in her letter of transmittal that it was payment in full for appellant's legal services and that "this completes and terminates the need for your legal services." The personal representative paid appellant from her personal funds and not from estate funds.[2] Appellant informed the personal representative that he was willing to collect his fee from the estate upon completion of probate. The personal representative insisted that appellant take the compensation immediately. Appellant then accepted. On March 16, 2001, appellant filed a praecipe signed by himself and the personal representative noting his withdrawal as counsel and that the personal representative would proceed pro se.[3]

On July 31, 2001, the personal representative filed her final account with the trial court. Included in that final account was the personal representative's request for

1. An opinion was previously issued in the case on June 21, 2007 and published at 928 A.2d 638 (D.C.2007). Appellant's petition for rehearing is granted, and the prior opinion is vacated.

2. At this time, the estate's major asset had not been sold, and the estate did not have the funds to pay this fee.

3. The personal representative later retained other counsel.

reimbursement of the attorney fees she had paid to appellant. On February 16, 2005, the trial court entered an order stating that it would approve the final accounting, but it took exception to appellant's failure to seek approval from the trial court before accepting compensation for the legal work he performed in the case. The trial court found such actions to run afoul of the 1981 version of D.C.Code § 20–751,[4] even though it found that the legal services rendered were necessary and that the requested hourly rate was reasonable. Nevertheless, the court ordered appellant to pay 25% of the fee ($1,734.28) to the estate as a sanction for accepting the fee without prior court approval.

It is the trial court's position that § 20–751 requires all compensation sought for work done on an estate to be first approved, regardless of the actual source of payment.[5] Although aware of a debate in the legal community as to the requirements of the statute when funds are not withdrawn directly from the estate, the trial court noted that appellant was aware that the trial court's position was that payment for services in connection with the administration of an estate was subject to prior court approval regardless of whether the funds come from the estate.[6] Relying on this court's decision in *Travers, supra* note 5, 764 A.2d 242, the trial court rejected appellant's argument that prior court approval was not required because the payment came from the client's personal funds at the client's insistence and not from estate assets. Appellant filed a timely notice of appeal.

4. The governing statute in this case is the 1981 version of D.C.Code § 20–751 which was in effect when Ms. Wilson died in 1990. The 1981 version of § 20–751 was enacted June 24, 1980, and remained in effect until the 1993 enactment of the current version of the probate statute. *See* Legislative History notes after D.C.Code §§ 20–101, –751 (2001). It is of no moment that the current version of § 20–751 became law well before the trial court opened a probate on the estate and clearly well before appellant was retained by the personal representative. The current version of § 20–751 was part of the Probate Reform Act of 1994 and applies only to estates of decedents dying after July 1, 1995. *See In re Estate of Delaney (Valentine v. Elliott)*, 819 A.2d 968, 993 n. 17 (D.C.2003); *In re Estate of King*, 769 A.2d 771, 777 n. 7 (D.C.2001). *See also* PROBATE REFORM ACT OF 1994 EMERGENCY AMENDMENT ACT OF 1995, D.C. Act 11–79, 42 D.C.Reg. 3452 (1995).

All references to § 20–751 in this opinion are to the 1981 version of that statute, unless otherwise specified.

5. Appellant did not assert in the trial court nor on appeal that the fees involved here fall within the provisions of D.C.Code § 20–752 (1981) (providing that "[w]ithout regard to the provisions of § 20–751," the personal representative or one nominated as such is entitled to the necessary expenses of litigation prosecuted or defended in good faith on behalf of the decedent's estate); *see also In re Travers*, 764 A.2d 242, 248 (D.C.2000) (declining to consider whether fees were the subject of D.C.Code § 20–752 instead of § 751 because the argument was barred by collateral estoppel).

6. The supposed notice stemmed from a previous matter appellant worked on before this particular trial judge where appellant was subject to a similar requirement. The previous matter, however, was not a probate case, but an intervention case that involved D.C.Code § 21–2060 (2000), and not § 20–751. The 2000 version of D.C.Code § 21–2060 states in relevant part that: "As approved by order of the court, any ... attorney ... is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement." The 1981 version of D.C.Code § 20–751, governing decedent's estates states in relevant part that: "Reasonable compensation for work performed by a[n] ... attorney with respect to administration of the estate pursuant to this title may be paid upon approval by the Court of a request filed as provided by subsections [of this statute]."

## II.

 The issue before this court is whether the trial court erred in interpreting D.C.Code § 20–751 (1981) as requiring prior court approval of legal fees paid for services related to the decedent's estate even though not paid from the estate's funds. The 1981 version of D.C.Code § 20–751 states in relevant part that: "Reasonable compensation for work performed by a[n] ... attorney with respect to administration of the estate pursuant to this title may be paid upon approval by the Court of a request filed as provided by subsections (c) through (g)." This court reviews the trial court's interpretation of a statute *de novo*. *See Cass v. District of Columbia*, 829 A.2d 480, 482 (D.C.2003).

This court addressed a contention similar to the one raised here in *Travers, supra* note 5, 764 A.2d 242 (appending *Travers v. Strupp*, No. 91–PR–1427 (D.C. April 16, 1993), an unpublished Memorandum Opinion and Judgment ("MOJ")). Both *Travers* cases[7] dealt with a dispute over the appellant's entitlement to legal fees for services rendered in connection with the sale of a home that constituted the decedent's sole asset. The appellant in *Travers* was retained by the decedent's family members—none of whom at the time were the personal representatives of the estate—to help prevent the foreclosure of the property. After forestalling the foreclosure on the property, obtaining financing for its renovation, and then facilitating a subsequent sale, appellant sought compensation from the family members who retained him. One of the decedent's daughters—who by this time had been appointed personal representative—paid the appellant with estate funds. No request was made to the trial court seeking this compensation. A court-appointed auditor-master was ordered to perform an accounting on the estate and discovered the unapproved payment of legal fees. After unsuccessfully attempting to have appellant formally make a request for the fees, the auditor-master recommended judgment in the amount of the fee against appellant. Appellant argued that he was not retained to perform services for the estate, but was retained by family members to stave off the impending foreclosure. Finding this argument unpersuasive, the trial court entered judgment against appellant to return the money to the estate. In affirming the trial court's ruling, we stated that "[b]ecause the property was an asset of the estate, any legal action [appellant] undertook with regard to the property was an action on behalf of the estate, and thus appellant is subject to D.C.Code § 20–751 and [ ] any payment made to him would have to be in accord with that statute." *Id.* at 247.

Appellant argues that the trial court's reliance on *Travers* is misplaced because that case is distinguishable on its facts. Notably, the appellant in *Travers* was paid with estate funds and not the private funds of the personal representative. Although we made clear in *Travers* that payment for actions taken on behalf of the estate fell under the ambit of D.C.Code § 20–751, we did not examine the source of the fees, and thus did not directly reach the separate question of whether the payment of fees from personal funds without court approval would violate the Act. We perhaps initially read *Travers* too broadly: to wit, that *any* payment for work done on behalf of the estate required prior court approval,

---

7. The *Travers* opinion was an appeal from an attorney discipline action taken by Bar Counsel in response to appellant's failure to return legal fees paid from estate funds as the trial court ordered, and this court affirmed in the previous MOJ. The MOJ simply affirmed the trial court's initial order.

even if from personal funds. Simply put, *Travers* does not state, and should not be read broadly to say, that payments of attorney's fees from a client's personal funds must be approved by the court.

Although *Travers* did not reach the question of whether the Probate Act required prior court approval for personal payment of an attorney's services, this court recently had the opportunity to reach the issue in a case involving a similar provision contained in the Guardianship Act.[8] In that case, *In re Estate of Grealis*, 902 A.2d 821 (D.C.2006), we rejected the position that prior court approval was required before fees could be paid to attorneys from private or personal sources. Our decision was based on the language of the Guardianship Act which we concluded requires prior court approval only for attorney's fees that are paid out of the ward's estate or the Guardianship Fund. This court noted, however, that the interest in safeguarding incapacitated persons was still met because the court continued to supervise all distributions made from estate funds. *Id.* at 826. Thus, a guardian or conservator who personally hired an attorney would need court approval for any subsequent reimbursement of those payments from estate funds.

These same principles should control the result here. D.C.Code § 20–751, like the similar provision in the Guardianship Act, does not expressly address the personal representative's payments to third parties, including attorneys, from personal funds. This does not mean, however, that the court loses the ability to safeguard the interests of the estate's creditors and beneficiaries. A request may be made, as it was in this case, to use the funds of the estate to reimburse the personal representative for payments made in connection with the lawyer's fee request. Thus, even if the personal representative pays the attorney up-front but later seeks reimbursement from the estate, the court retains a supervisory role over the distribution of the estate's assets. The purpose of the act is still fulfilled. While there is a natural concern for protecting personal representatives, who on average may be less experienced with probate matters than attorneys practicing in that field, what we said in *Grealis* applies here: "interpreting [the statute] to require approval of payments from [a personal representative's personal funds] would abridge the right of competent adults to enter into otherwise-lawful economic transactions with other competent adults by requiring prior court approval." 902 A.2d at 826. There is "no basis for heightened court oversight of the lawyer-client relationship in [probate] cases." *Id.* After all, one of the reforms adopted by the 1981 probate code was to enhance the power of the personal representative. *See* LEGISLATIVE HISTORY OF D.C. LAW 3–72, Bill No. 3–91, at 4 (1980) ("To reduce the need to obtain specific court authorization in uncontested matters by increasing the powers and responsibilities of the personal representative ..."). Therefore, we hold that there is no statutory basis for requiring attorneys to seek prior court approval before accepting compensation from a personal representative's personal funds for estate related services.[9]

---

8. D.C.Code § 21–2060 (2000).

9. While the statutory scheme contained in the Probate Reform Act of 1980 supports this proposition, this court has yet to address whether the Probate Reform Act of 1994 requires the personal representative to seek court approval prior to compensating attorneys who perform work on behalf of the estate from private or personal sources. We find it significant, however, that the amended version of the Act provides for discretionary court review of compensation payments by personal representatives, but does not contain the express language requiring prior court

 Having determined that the Act does not require attorneys to await court approval prior to accepting attorney's fees from a client's personal funds, we must therefore conclude that the trial court erred in imposing sanctions against the appellant in this case. This court has recognized that a trial court may exercise its discretion in imposing sanctions against litigants and their attorneys to coerce compliance with a court's order and, also, to compensate an adversary for losses sustained. *See Giles v. Crawford Edgewood Trenton Terrace,* 911 A.2d 1223, 1224 (D.C. 2006) (quoting *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). Here, however, the trial court's purpose was to sanction the appellant for failure to seek court approval before accepting attorney fees in a probate case from a client's personal funds—a requirement that is not contemplated by the Act. Further, while the trial judge asserted that appellant was on notice of the requirement to seek court approval from a previous matter appellant had worked on before this particular trial judge, that matter was an intervention case involving D.C.Code § 21–2060, and not § 20–751. Yet, D.C.Code § 21–2060 is the very provision this court recently determined did not require prior court approval where the fee came from personal funds. *See Grealis, supra,* 902 A.2d at 823–24. It would be unreasonable to uphold a sanction imposed for an attorney's failure to obtain prior court approval when the statute, in fact, does not require such approval. Therefore, we conclude that the trial court's order requiring appellant to reimburse the estate (from which the personal representative sought reimbursement from the court) in an amount equal to 25% of his fee must be vacated.

approval before compensation can be paid to attorneys. D.C.Code § 20–751 & –753

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded with instructions to vacate the order imposing sanctions upon appellant.

*So ordered.*