*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 20-PR-368

IN RE: WILFORD E. BINGHAM, III;
KILOLO KIJAKAZI, APPELLANT,

V.

JENNIFER J. BINGHAM,
APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(INT-84-19)

(Hon. Jonathan H. Pittman, Trial Judge)

(Submitted March 25, 2021     Decided March 24, 2022)

*Robert S. Bullock* and *Allison M. Mazzei* were on the brief, for appellant.

Jennifer J. Bingham, *pro se*.

Before GLICKMAN and MCLEESE, *Associate Judges*, and WASHINGTON, *Senior Judge*.

GLICKMAN, *Associate Judge*: With the assistance of counsel, Dr. Kilolo Kijakazi successfully petitioned the Superior Court to appoint a guardian and conservator for her brother, Mr. Wilford E. Bingham. In doing so, Dr. Kijakazi incurred and paid her attorneys' fees and other costs of the proceeding. The Superior

Court ruled, however, that Dr. Kijakazi was not entitled to any reimbursement of those expenditures from Mr. Bingham's estate or the District's Guardianship Fund. Dr. Kijakazi appeals that ruling. We reverse and remand for the Superior Court to consider her application for reimbursement.

## I. The Intervention Proceeding and Petition for Compensation

In January 2019, Dr. Kijakazi retained counsel with The Elder & Disability Law Center to petition for a general intervention proceeding and the appointment of a guardian and conservator for her 66-year-old brother, Mr. Bingham. As the petition recited, Mr. Bingham had resided with Dr. Kijakazi in her home since October 2016, when he was discharged from a hospital directly into her care. She decided to file the petition after determining that she was no longer able to fulfill the responsibilities of managing her brother's care and his finances. According to appellant's brief, her counsel informed her at the beginning of their engagement that she might be entitled to reimbursement of legal fees and other costs from Mr. Bingham's assets at the conclusion of the case, though there was no guarantee the court would grant a request for such reimbursement.

Upon the filing of the petition, the court appointed counsel for Mr. Bingham and an examiner. On April 2, 2019, after the examiner filed her report finding that

Mr. Bingham was incapacitated and recommending appointment of a guardian, the court held a hearing on the petition. The hearing was attended in person by Dr. Kijakazi, Mr. Bingham, and their sister, Jennifer Bingham. Each of them appeared with counsel. The examiner also attended the hearing. At its conclusion, the court found Mr. Bingham to be incapacitated. It appointed Jennifer Bingham and Matthew Hertz, an attorney, to serve as his co-guardians, and Mr. Hertz to serve also as conservator.

Thereafter, Dr. Kijakazi, by counsel, sought reimbursement of the attorney's fees and costs she had incurred in connection with the intervention proceeding, pursuant to D.C. Code § 21-2060[1] and Superior Court Probate Rule 308.[2] Those expenses, which Dr. Kijakazi had paid out of her own pocket, amounted to $5,807.91. The court denied her initial reimbursement petition without prejudice to "an amended petition for fees accompanied by a statement of services performed that would permit the Court to [determine] whether the fees sought were

---

[1] 2012 Repl. & 2021 Supp.

[2] Pursuant to D.C. Code § 11-946 (2012 Repl.), the Board of Judges of the Superior Court has issued Rule Promulgation Order 22-03 approving amendments revising and reorganizing the Superior Court Rules of the Probate Division. The effective date of the amendments is August 22, 2022. In the amended Probate Rules, Rule 322 will replace what is now Rule 308.

reasonable." Dr. Kijakazi, still represented by her counsel and with their assistance, then filed an amended petition providing the requested detail.

On April 22, 2020, the court denied Dr. Kijakazi's amended petition in toto. The court ruled that Dr. Kijakazi was not entitled to any reimbursement for the following reasons: First, the court stated, D.C. Code § 21-2060 and Probate Rule 308 do not contemplate that a person who retains an attorney to petition for appointment of a guardian or conservator may seek reimbursement of the attorney's fees and costs from the ward's estate or the Fund. Second, Dr. Kijakazi had not complied with what the court said was "the practice of the Probate Division that in any case where petitioner's attorney will be seeking fees from either the Guardianship Fund or the ward's funds, the attorney must file a notification of his or her intention to seek such fees." Third, the court said, Probate Rule 308(b)(1)(I) requires an attorney's petition for compensation to state whether the attorney "has been or has an agreement to be compensated from a source other than the estate or the Guardianship Fund." Dr. Kijakazi had furnished this information. But because the attorneys who filed the guardianship petition for Mr. Bingham had been paid by her, the court stated, they "cannot make the certification required by Rule 308(b)(1)(I)." Finally, the court observed that petitioners "routinely file petitions for appointment of a guardian for a family member *pro se*, i.e., without the assistance

of counsel," and it opined that "[w]hile counsel can provide assistance and guidance to a petitioner, counsel is not necessary" in such cases.

On appeal, Dr. Kijakazi argues that each reason given by the trial court for denying her petition for reimbursement was erroneous as a matter of law. For the following reasons, we agree with her.[3]

## II. The Threshold Question of Eligibility for Reimbursement

"Generally, we review the grant or denial of attorney's fees for abuse of discretion. However, we review de novo the Superior Court's statutory authority to

---

[3] Appellee, Ms. Bingham, does not respond to Dr. Kijakazi's legal arguments on appeal or defend the trial court's reasons for denying the reimbursement petition. Ms. Bingham opposes any reimbursement for Dr. Kijakazi on other grounds, relating mainly to her dissatisfaction with the care her brother received after the co-guardian placed him in a facility located in Baltimore County, Maryland. The issues Ms. Bingham raises are outside the scope of this appeal and it would be inappropriate for us to address them at this time. We express no view as to the merits of Ms. Bingham's objections or their relevance to the court's consideration of the reimbursement petition on remand.

award particular fees and costs."[4] Our review of the trial court's interpretation of both the Guardianship Act and Probate Rule 308 is likewise de novo.[5]

The Guardianship Act states that "any person interested in the welfare of [an] incapacitated individual may petition for appointment of a guardian"[6] or a conservator.[7] The filing of such a petition begins a legal proceeding. The Act provides for the court to hold an evidentiary hearing on the issue of incapacity and other issues, at which the allegedly incapacitated individual "shall be represented by counsel and [be] entitled to present evidence and to cross-examine witnesses."[8] The petitioner is a party to this proceeding[9] and bears the burden of proving incapacity and the need for a guardian or conservator by clear and convincing evidence.[10] The

---

[4] *In re Weaks*, 224 A.3d 1028, 1031 (D.C. 2020) (citations omitted).

[5] *In re Grealis*, 902 A.2d 821, 824 n.5 (D.C. 2006).

[6] D.C. Code § 21-2041(a) (2012 Repl. & 2021 Supp.).

[7] *See id.* § 21-2052 (2012 Repl.).

[8] *See id.* §§ 21-2041(d)-(h), -2054 (2012 Repl. & 2021 Supp.)

[9] Super. Ct. Prob. R. 303(a).

[10] *See* D.C. Code § 21-2003 (2012 Repl. & 2021 Supp.) ("[T]he petitioner or moving party shall present clear and convincing evidence that [appointment of a guardian or conservator] is warranted.").

court may permit other interested parties to participate in the proceeding "upon determining that the best interest of the alleged incapacitated individual will be served."[11] After the hearing, the court "may appoint a guardian as requested if it is satisfied that the individual for whom a guardian is sought is incapacitated and that the appointment is necessary as a means of providing continuing care and supervision of the person of the incarcerated individual."[12] In that event, the court "shall appoint the type of guardianship that is least restrictive to the incapacitated individual in duration and scope, taking into account the incapacitated individual's current mental and adaptive limitations, the incapacitated individual's ability to improve his or her condition, or other conditions warranting the appointment."[13] On "appropriate findings," the court also may appoint a conservator, enter "any other appropriate order," or dismiss the petition.[14]

The compensation provision of the Guardianship Act, D.C. Code § 21-2060(a), provides that

---

[11] D.C. Code. §§ 21-2041(i), -2054(f).

[12] D.C. Code § 21-2044(b) (2012 Repl. & 2021 Supp.).

[13] *Id.* § 21-2044(a).

[14] *Id.* §§ 21-2044(b), -2054(g).

> [a]s approved by order of the court, any case reviewer, visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement.

The provision further states that such compensation "shall be paid from the estate" of the incapacitated person or, if that estate "will be depleted by payouts made under this subsection, from a fund established by the District," which is known as the Guardianship Fund.[15]

Superior Court Probate Rule 308 details the requirements a petition for compensation must satisfy. Among other things, the petition must describe the service rendered, the time spent, and the benefits that accrued therefrom to the estate or the subject of the proceedings. In addition, the petition must state "whether the petitioner has been or has an agreement to be compensated from a source other than the estate or the Guardianship Fund."[16] The petition must be verified and must be

---

[15] D.C. Code § 21-2060(a)-(b) (2012 Repl. & 2021 Supp.).

[16] D.C. Super. Ct. Prob. R. 308(b)(1)(I).

served on all parties to the intervention proceeding, along with a notice informing them of their right to object or consent to the petition.[17]

We held in *In re Weaks* that an attorney who petitions for a guardianship, or who otherwise renders assistance to the initiation and prosecution of an intervention proceeding, is eligible under D.C. Code § 21-2060 for reasonable compensation from the ward's estate or the Guardianship Fund. Such service, we stated, "squarely falls within the ambit of the Act."[18]

The trial court distinguished this case from *Weaks* on the ground that Dr. Kijakazi "is not seeking compensation for services that she personally rendered as the petitioner," but instead "is seeking reimbursement of funds that she paid out of her own pocket to retain counsel to prepare the petition for appointment of a guardian and conservator." The court deemed Dr. Kijakazi ineligible for reimbursement of such funds in the absence of a statute or rule expressly permitting it.

---

[17] *Id.* R. 308(d), (f).

[18] *In re Weaks*, 224 A.3d at 1032. We stated that, "[i]n the language of D.C. Code § 21-2060(a)," such a petitioner is eligible for compensation because she "is an attorney who has rendered services in a guardianship proceeding." *Id.* (quotation marks, brackets, ellipses, and footnote omitted).

It is true that D.C. Code § 21-2060 and Probate Rule 308 allow attorneys who initiate intervention proceedings to petition for reasonable compensation without explicitly addressing whether the parties in interest who employ those attorneys and advance them their fees out of their own pockets may seek compensation in their stead. But we have considerable reason to construe the statute and Rule to allow such compensation.

To begin with, the Guardianship Act is to be "liberally construed and applied to promote" its goals of providing guardianships for incapacitated persons and a "speedy and efficient system" for protecting their estates.[19] Where attorney assistance in pursuing intervention proceedings is beneficial to the ward or the ward's estate, it furthers those goals to make reimbursement available to laypersons who pay for that assistance. That is because — as this court has recognized — attorneys who initiate such proceedings are generally not appointed by the court,[20] and in many cases (especially those involving small estates) they will decline the

---

[19] D.C. Code § 21-2001(a), (b) (2012 Repl.); *see Weaks*, 224 A.3d at 1034; *In re Smith*, 138 A.3d 1181, 1186 (D.C. 2016).

[20] *See Weaks*, 224 A.3d at 1034. There is no requirement that an attorney be appointed by the Probate Division in order to receive compensation for initiating a guardianship or other intervention proceeding. *Id.*

engagements if they "would only be entitled to receive payment from the Guardianship Fund, which involves relatively low rates."[21]

The Guardianship Act also provides that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity supplement its provisions."[22] Where an attorney would be entitled to apply for and receive compensation under the Act for beneficial services rendered in connection with an intervention petition, such principles support extending that entitlement to the client who pays the attorney instead to perform those services. Such a client stands in the shoes of the attorney in seeking reimbursement to which the attorney would otherwise be entitled; the applicable principles are essentially those of equitable subrogation, the substitution of one person to the position of another, an obligee, whose claim the person has satisfied.[23] Thus, this situation does not raise a concern about double compensation being paid from the estate or the Guardianship Fund.

---

[21] *Grealis*, 902 A.2d at 826.

[22] D.C. Code § 21-2002(a) (2012 Repl.); *see Weaks*, 224 A.3d at 1034; *Smith*, 138 A.3d at 1187 n.11.

[23] *See E. Sav. Bank, FSB v. Pappas*, 829 A.2d 953, 957-58 (D.C. 2003); *District of Columbia v. Aetna Ins. Co.*, 462 A.2d 428, 430-31 (D.C. 1983).

We are aware of no other valid objection to allowing the client to petition for reimbursement in lieu of the attorney.

Furthermore, there is support for it in our case law and that of the Superior Court. In the three appeals consolidated in *Grealis*, "the petitioners had retained an attorney and paid him with their own funds to help prepare and submit a petition for a guardianship and/or conservatorship, subsequently granted."[24] The Superior Court deemed the attorneys' receipt of those payments improper because they were made without prior court approval. It denied the clients' applications to the court for reimbursement from the ward's estate or the Guardianship Fund of their legal fees and costs, and instead ordered the attorneys to give their clients full refunds. We reversed, holding that when attorney's fees are not paid from the estate of a protected individual or from the Fund, but rather are paid from private funds, "no statutory basis exists for requiring court approval."[25] In so holding, we strongly indicated that the clients themselves are eligible to seek reimbursement for the retainers they paid the attorneys to petition for a guardianship or conservatorship. We perceived that the underlying concern in such cases was "not with depletion of the ward's estate or

---

[24] 902 A.2d at 822.

[25] *Id.*

the Guardianship Fund, but with overreaching or deception by attorneys who are paid retainers while falsely assuring the client that reimbursement will be available — as a matter of course, and without court inquiry into the reasonableness of the fees — from the estate or the Fund."[26]  But that concern does not mean clients are barred from obtaining reimbursement.  On the contrary, we saw "no evidence" of overreaching in the record before us in *Grealis*, and we expressed our approval of the attorney who "merely informed the client, *correctly*, that reimbursement of the fees she had paid out of pocket would be possible or 'permissib[le].'"[27]  Such reimbursement from the ward's estate or the Fund would be permissible precisely because, as we emphasized, "court approval is required before compensation may be paid from estate funds. . . . [R]egardless of the agreements between clients . . . and their attorneys about fee payments, no reimbursement for such payments may be sought *except by petition to the court and its review of the propriety and reasonableness of the fees requested*."[28]

---

[26] *Id.* at 826.

[27] *Id.* at 826 n.9 (emphasis added; brackets in the opinion).

[28] *Id.* at 826 (emphasis added).  Accordingly, we said, "the interest that is unique to these cases — protecting incapacitated individuals and their estates — suffers no diminution from preclusion of court intervention in the private arrangements at issue here."  *Id.*

We are aware that, in the years since this court decided *Grealis*, judges on the Superior Court have disagreed or expressed uncertainty over their authority under the Guardianship Act to award reimbursement from the ward's estate or the Guardianship Fund to a petitioner who has paid an attorney in advance to initiate and litigate an intervention proceeding. Even so, the Superior Court's website informs the public that petitioners can be reimbursed for those legal fees if the court finds the petition for intervention meritorious and approves the request.[29]

If the question is unsettled, it should not remain so. Based on the preceding discussion, we hold that subject to D.C. Code § 21-2060 and court approval, persons who expend their own funds to hire and compensate an attorney for services rendered in a guardianship or other protective proceeding, or in connection with a

---

[29] *See* Intervention Proceedings (INT/IDD) FAQs, Fees – Can a Petitioner be Reimbursed for Legal Fees Paid to File a Petition for a General Proceeding?, DISTRICT OF COLUMBIA COURTS, (last visited March 2, 2022 12:05 PM), https://www.dccourts.gov/services/faqs/filtered?location[0]=intiddlegal&location[1]=int&location=intervention; https://perma.cc/54GT-6H2R. ("Yes, if the Court finds the Petition for a General Proceeding to be meritorious and approves the request. The request must be approved by the Court before the fees are reimbursed. Failure to obtain prior Court approval could result in removal. It is recommended that a petition for compensation completed by counsel accompany any petition for approval of such an expenditure. *In re Randolph Brevard, Sr.*, 2011 INT 44, 8-5-11 order; *In re Leon M. Stanard*, 2011 INT 20, May 26, 2011 order."). (The two citations are to Superior Court orders in two intervention cases.)

guardianship or other protective arrangement, are eligible for reimbursement from the estate of the ward or from the Guardianship Fund.

That conclusion also serves to dispose of one of the trial court's other reasons for denying Dr. Kijakazi's petition for reimbursement – that her previous compensation of her attorneys precluded *them* from applying to the court for compensation from the ward's estate or the Guardianship Fund. Probate Rule 308(b)(1)(I) requires a petitioner seeking compensation from the estate or the Fund to state "whether the petitioner has been or has an agreement to be compensated from a source other than the estate or the Guardianship Fund." The obvious purposes of this disclosure requirement are to ensure that attorneys or other petitioners are not compensated more than once for the same work and do not receive excessive compensation from wards' estates or the Fund for the services rendered.

But the petitioner here was Dr. Kijakazi herself, and she had not been reimbursed from any source for the attorneys' fees and costs she had paid in connection with the guardianship proceeding. There was nothing improper in her payment of those expenses. Accordingly, as this opinion now makes clear, Dr. Kijakazi is eligible for reimbursement from the ward's estate or the Guardianship

Fund. Her payment of the attorneys' charges is the basis for her eligibility, not a bar to it.

### III. The Remaining Grounds for Denial of Reimbursement

As an additional reason for denying Dr. Kijakazi's petition for reimbursement, the trial court cited her failure to comply with "the practice of the Probate Division that in any case where petitioner's attorney will be seeking fees from either the Guardianship Fund or the ward's funds, the attorney must file a notification of his or her intention to seek such fees." Dr. Kijakazi and her counsel contend, without contradiction, that they were not informed of any such notification requirement or "practice" and therefore cannot be penalized for not complying with it.

We have not been directed to any statute or Rule imposing the notification requirement described by the court, and we are aware of none. Nor does the record on appeal indicate that Dr. Kijakazi or her counsel were informed of that requirement. The trial court's order does not state they were.

As support for the existence of such a requirement or "practice," the order denying Dr. Kijakazi's petition cites only a Memorandum and Order Regarding Fee Petition of Counsel for Petitioner that was entered in another, unrelated Superior Court intervention proceeding, *In re Nugent*.[30] So far as appears, neither Dr. Kijakazi nor her counsel were involved in *Nugent*; their names are not on the list of persons to whom the order in that case was sent.

In his *Nugent* order, Associate Judge Gerald I. Fisher explained that, in intervention proceedings over which he presided, he had held that "when a petitioner's attorney will be seeking payment from either the ward or the Guardianship Fund and not from the client, s/he must promptly notify the court of that intention."[31] Judge Fisher went on to say that, in order to address the recurring issue, "the judges currently presiding over calendars within the Probate Division have conferred and are in agreement that as of this date [i.e., November 2, 2018], in

---

[30] 2018 INT 000187 (D.C. Super. Ct., Nov. 2, 2018).

[31] *Id.* at 7. Judge Fisher explained that "[t]his requirement enables the court to take the cost of the petitioning counsel's fees into consideration when deciding what additional appointments it will make and what actions it may take in the case," and "enables the ward and his/her counsel to weigh the potential cost to the ward in deciding how to proceed in cases where the ward may be responsible for payment." *Id.*

any case in which the petitioner's counsel will be seeking payment for his/her services from either the Guardianship Fund or the ward, he/she must file a notification of such intent along with the intervention petition. . . . The failure to inform the court of the intention to seek payment from the Guardianship Fund or the ward may result in disallowance of all or part of the fee petition."[32]

We express no view as to the appropriateness of the notification requirement announced in *Nugent*; this appeal does not present us with that question. Given that the requirement appears to be little more than an informal practice adopted by judges in the Probate Division without incorporation in the Probate Rules or other formal public announcement, and in the absence of any indication that Dr. Kijakazi or her counsel were informed of the requirement by the judge in this case (or otherwise), we do not see how the requirement can be applied to them retroactively to deprive Dr. Kijakazi of her eligibility for reimbursement of her attorneys' fees and costs.

Finally, the trial court expressed the view that petitioners seeking the appointment of a guardian for a family member typically do not need the guidance and assistance of counsel in intervention proceedings. We are skeptical of that view,

---

[32] *Id.* at 9-10.

especially given that most laypersons are unfamiliar with the process and ill-equipped to navigate it by themselves.  But whatever the validity of the court's generalization, it is not a justification for denying a petitioner's proper application for reimbursement of attorney's fees and costs without considering that application on its individual merits under the accepted standards of reasonableness, benefit to the ward or estate, and so forth.

## IV.

For the foregoing reasons, we reverse and remand this case to the Superior Court for further proceedings consistent with this opinion.