In re John H. PYE, Jr., Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 436695).

No. 12–BG–83.

District of Columbia Court of Appeals.

Argued Dec. 18, 2012.
Decided Dec. 27, 2012.

---

James T. Maloney, Washington, for respondent.

Elizabeth A. Herman, Deputy Bar Counsel, for Bar Counsel. Wallace E. Shipp, Jr., Bar Counsel, Jennifer Lyman, Senior Assistant Bar Counsel, and Ross T. Dicker, Assistant Bar Counsel, were on the brief for Bar Counsel.

Before OBERLY and McLEESE, Associate Judges, and SCHWELB, Senior Judge.

PER CURIAM:

In its January 26, 2012, Report and Recommendation, the Board on Professional Responsibility ("BPR" or the "Board") unanimously[1] agreed with the Hearing Committee that respondent, John H. Pye, Jr., should be disbarred for misappropriation[2] of entrusted estate funds and

---

1. Ms. Butler and Mr. Barker did not participate in this matter.

2. Misappropriation is "any unauthorized use of client[ ] funds [or estate funds] entrusted to [the attorney], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [he] derives any personal gain or benefit therefrom." *In re Edwards,* 808 A.2d 476, 482 (D.C.2002).

violation of numerous Rules of Profession-al Conduct[3] in connection with his appoint-ment as the Successor Personal Represen-tative of the Green Estate. Bar Counsel supports BPR's Report and Recommenda-tion.

■ This court "must 'accept the find-ings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsis-tent dispositions for comparable conduct or would otherwise be unwarranted.'" *In re Cleaver–Bascombe*, 986 A.2d 1191, 1194 (D.C.2010) (per curiam) (quoting D.C. Bar R. XI, § 9(h)(1)). Here, the Board's thor-ough report, which is appended to this opinion, sets forth in detail respondent's conduct and contains a comprehensive analysis to support its conclusions and rec-ommended sanction. We see no need to duplicate the details of respondent's course of conduct and conclude, for substantially the reasons stated by the Board, that re-spondent intentionally misappropriated client funds and committed other acts vio-lative of the Rules of Professional Conduct,

including repeated acts of dishonesty over an extended period of time.

■ Accordingly, we accept the Board's recommendation of disbarment be-cause "it is not inconsistent with the range of discipline imposed in similar cases" in-volving misappropriation of funds. *In re Evans*, 902 A.2d 56, 58 (D.C.2006) (per curiam); *see also In re Omwenga*, 49 A.3d 1235 (D.C.2012) (per curiam) (ordering dis-barment of lawyer who misappropriated client funds); *In re Rivlin*, 856 A.2d 1086 (D.C.2004) (per curiam) (same). Indeed, "in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the miscon-duct resulted from nothing more than sim-ple negligence." *In re Rivlin*, 856 A.2d at 1087 (quoting *In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc)). This is a princi-ple to which we "adhere[ ] firmly," *id.*, because "such violations strike at the core of the attorney-client relationship by un-dermining the public's faith that attorneys will fulfill their duties as fiduciaries in handling funds entrusted to them by their clients." *In re Omwenga*, 49 A.3d at 1238 (internal quotation marks omitted).[4]

---

3. The Board recommends that this court find that Mr. Pye violated Rules 1.1(b) for failure to keep complete records of the disburse-ments; 1.3(c) for failing to act with "reason-able promptness" in disbursing the inheri-tance from the estate to the heirs; 1.5(a) for taking the interest accrued on the estate funds as compensation without authorization from the probate court or the heirs; 1.15(a) by misappropriating estate assets, commingling estate funds with his personal account, and failing to "maintain complete records" con-cerning his service as personal representative; 1.15(c) for failing to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive" (formerly Rule 1.15(b)); 1.16(d) for failing to "take timely steps to the extent reasonably practicable to protect [the interests of the estate]"; 8.4(c) for "obtaining the consent of some of the heirs by represent-ing that he could not distribute the undisput-

ed portion of the Estate until his appeal was resolved" and "asserting that he had a rea-sonable chance of success on appeal"; and 8.4(d) for "engag[ing] in conduct that serious-ly interferes with the administration of jus-tice" such as failing to disburse the inheri-tances to the heirs once the final accounting was approved, failing to "turn over meaning-ful Estate records," and misleading "the Pro-bate Court into believing that he would dis-tribute undisputed amount to the heirs."

4. In arguing that disbarment is an unduly harsh sanction, respondent relies on *In re Mance*, 980 A.2d 1196 (D.C.2009) (censure warranted for misappropriation, where attor-ney in good faith believed that flat fee paid in advance for legal services was property of attorney), and *In re Fair*, 780 A.2d 1106 (D.C. 2001) (suspension rather than disbarment warranted for misappropriation because,

It is therefore ORDERED that John H. Pye, Jr., be, and hereby is, disbarred from the practice of law in the District of Columbia. We direct respondent's attention to the affidavit requirement of D.C. Bar Rule XI, § 14(g), as well as Rule XI, § 16, which sets out the conditions for possible reinstatement after "the expiration of at least five years from the effective date of the disbarment." As required by that rule, respondent must show, *inter alia,* that the misappropriated funds have been repaid with interest.

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS

### BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of JOHN H. PYE, JR., Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 436695)

Board Docket No. 09–D–077

Bar Docket No. 170–01

### REPORT AND RECOMMENDATION OF THE *BOARD ON PROFES-SIONAL RESPONSIBILITY*

This case is before the Board on findings by an Ad Hoc Hearing Committee that Respondent, *inter alia,* intentionally misappropriated entrusted estate funds when he resorted to self-help to recover the portion of his fee disallowed by the Probate Court. The Hearing Committee also found that Respondent violated eight other Rules of Professional Conduct. The Hearing Committee recommended that Respondent be disbarred for the misappropriation. We agree.

### I. *Background*

On August 11, 2009, Bar Counsel filed a Specification of Charges alleging that, in connection with his service as the Successor Personal Representative of the Green Estate, Respondent violated Rules 1.1(b) (lack of skill and care), 1.3(c) (lack of promptness), 1.5(a) (unreasonable fee), 1.15(a) (commingling, intentional misappropriation, and failure to maintain complete financial records), 1.15(b) (failure to promptly deliver funds), 1.16(d) (failure to protect a client's interest on termination of representation), 4.3(a) (dealing with unrepresented persons), 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (serious interference with the administration of justice). Hearings were held on July 13 and 14, 2010, before an Ad Hoc Hearing Committee. The Hearing Committee issued its report on May 13, 2011, finding that Respondent had violated all of the rules charged, with the exception of Rule 4.3(a), and had engaged in intentional and negligent misappropriation. Respondent excepted to the Hearing Committee Report, and oral argument was held before the Board on July 21, 2011.[1]

### II. *Findings of Fact*

We adopt the Hearing Committee's findings of fact, which are supported by substantial evidence in the record. We supplement those findings with additions as reflected in the following summary of the

among other things, attorney's conduct, though contrary to then-applicable rule, was not uncommon at time and was in part result of negligence). The conduct at issue in those cases, however, was not remotely as egregious as the course of conduct in this case.

1. Bar Counsel did not except to the Hearing Committee's Report.

relevant findings.[2] *See* Board Rule 13.7 (authorizing the Board to "modify, or expand the findings ... of the Hearing Committee" based on clear and convincing evidence).

1. Respondent was appointed the successor personal representative of the Estate of Mr. Leroy Green in July 1994. FF 2, 3.[3] Respondent had never before served in that capacity, and this was his first probate case involving estate administration. FF 3; Tr. 178, 357–58 (Respondent).

2. Mr. Green died intestate with at least five surviving siblings and several living nieces and nephews. FF 2. The value of the Estate was approximately $140,000, including real estate valued at $92,500. FF 6. Respondent filed his First Annual Accounting in June 1995. FF 7. The Court approved the accounting in February 1996. FF 9. Respondent filed his Second and Final Accounting in December 1996, which he subsequently amended in April 1997. FF 11, 13. The Court approved the Final Accounting in July 1999 after it was amended and corrected pursuant to its Order of August 5, 1998. FF 50.

3. In December 1996, Respondent filed a "Request for Compensation for Services" in which he sought fees of $44,000[4] and expenses of $1,000. FF 15. Respondent asserted that the fees were reasonable and represented approximately 33% of the Estate's assets and income. *Id.* Several heirs objected to Respondent's fee request, and, in an order released on August 5, 1998, the Probate Court (referred to as "Probate Court" or "Court") disallowed a portion of Respondent's fee request. FF 18–19. The Court found that, while the hourly rate was reasonable, the amount of time was not; that Respondent had improperly rounded up the fees; and that Respondent overcharged for travel within the District of Columbia. FF 19–20. The Court disallowed approximately $9,000 in fees, disallowed some of his $1,000 in expenses, and imposed an additional 20% penalty, thereby reducing Respondent's request by approximately $17,000. FF 20–21, 36. The Court ordered the probate staff to recompute the amount due each heir and ordered Respondent to file by November 2, 1998, receipts from all the heirs acknowledging their receipt of the final proper distribution. *Id.* In September 1998, Respondent withdrew all but $41.84 of authorized fees from the Estate account. FF 22.

4. Unhappy with the Court's action, Respondent consulted with Nicholas D. Ward, Esquire, a D.C. attorney who specializes in trusts, estates and fiduciary litigation, for advice as to how he might recover the disallowed amounts. FF 23. Mr. Ward advised that it was unlikely that Respondent could recover the fees by seeking reconsideration of the Probate Court's Order and recommended that Respondent note an appeal and use the time while the appeal was pending to obtain the heirs' consent to the disallowed amounts. FF 24–25. While recommending that Respondent appeal, Mr. Ward did not believe Respondent's chances of success on appeal were good. At the hearing, he testified that "I don't think I would have" advised Respondent that his chances of success on

---

**2.** Our supplemental findings are noted by direct citations to the record.

**3.** "FF" refers to the Hearing Committee's numbered findings of fact. "BX" refers to Bar Counsel's exhibits. "RX" refers to Re-

spondent's exhibit. "Tr." refers to the transcript of the hearing.

**4.** In requesting the $44,000, Respondent rounded-up the actual fee calculation from $43,378.75. FF 20.

appeal were good or reasonably good. Tr. 312–13.

5. As recommended by Mr. Ward and using a motion Mr. Ward drafted, Respondent petitioned the court to make the order final, to stay the requirement that he file distribution receipts from the heirs and to increase his bond to reflect the Estate funds to be withheld while the appeal was pending. FF 25–26, 28; BX F15. In his motion, Respondent advised the Court that, while his appeal was pending, "[t]he balance of the estate, as shown on the pending account, beyond the amount of the fee denied [to Respondent], *could be distributed at this time and does not need to be bonded.*" FF 29 (quoting BX F15 at 181) (emphasis in Hearing Committee report).

6. On January 26, 1999, the Probate Court entered the final order requested by Respondent. FF 34. In an undated letter sent "not later than mid-February 1999," Respondent's Brief ("R. Brief") at 9, Respondent wrote to each of the heirs and offered to drop his planned appeal if they would collectively pay the disallowed amount of his fee.[5] BX F19. In relevant part, the letter advised the heirs that:

> In view of the Court's most recent Order which stays its August Order[,] I will *not be in a position to make a distribution to you until the Court of Appeals decides my appeal,* which most probably will not be for at least another year. . . .

> The effect of the Court's August 5, 1998, Order is to reduce my fee and charges by $17,159.30 which in turn increases the amount available to distribute to you by a like amount. Where [sic] each of you receiving substantial shares in this estate that would mean you would obtain a significant increase in your distributable share. *But the fact is that none of you is receiving a substantial distribution.* [The letter then explains the amount each class of heir would forego if they agreed to Respondent's proposal]. . . . *The question is how long do you want to wait?*

> The appeal which I am taking *I think has a reasonably good chance of success,* which means that *you will receive the smaller sum at least a year from now, whereas if we can settle this matter now you can receive that sum now.* Of course if I lose the appeal you will be entitled to the larger sum *but you will not receive it for at least the year that the Court of Appeals will undoubtedly take to decide the appeal.* I should think you would like to have this matter over as much as I, however, I can not afford to work on an estate like this only to have the Court reduce my fee and costs. Accordingly I must appeal, but I do not need to, if you agree to the fee I originally sought this whole case will be over and you will have your money now.

BX F19 at 187 (italics supplied; underline in original). The letter also advised the heirs that Respondent planned to retain the interest accrued on the Estate funds as compensation for his continuing work for the Estate. FF 42. Contrary to Respondent's assertion, Mr. Ward did not draft the substance of the letter, although he might have calculated the amounts due each heir set forth in the letter. FF 35.

7. Respondent's statement in the February 1999 letter to the heirs, that he was unable to make a distribution under the Probate Court's January 26, 1999 Order

---

5. It is not clear from the record when Respondent noted the appeal. His letter to the heirs stated that he would take the appeal on or before February 25, 1999. BX F19 at 187. As noted below, he did file an appeal, although he never filed a brief and ultimately moved to dismiss the appeal.

until his appeal was decided, was false. The Court's order did not restrict Respondent's ability to distribute the estate funds: it only stayed Respondent's obligation to file receipts to show that the heirs had received their inheritance. FF 37. As a result, Respondent was free to disburse the funds to the heirs. *Id.* In addition, and as the Hearing Committee found, Respondent testified falsely that he did not understand that the motion filed with the Court sought distribution of all undisputed assets of the Estate. FF 32. The Hearing Committee credited Mr. Ward's testimony, that it was "unlikely" that he failed to explain the motion to Respondent,[6] and found that Respondent's claim that he did not understand the Court's January 26, 1999, Order was not credible because "nothing in the straightforward, one-page order supports Respondent's far-fetched interpretation." FF 29–39.

8. We believe that Respondent's own statements show that he could not have believed that the Court's January 26, 1999, Order precluded him from distributing the undisputed amounts. Thus, Respondent's letter to the heirs stated that he would distribute the funds immediately if they agreed to the smaller distributions. FF 39. In the letter, Respondent also misrepresented that his appeal "had a reasonably good chance of success, which means that you will receive the smaller sum at least a year from now, whereas *if we can settle this matter now* you can receive that amount now." BX F19 at 187. We agree with the Hearing Committee that there was no basis for Respondent to honestly predict that he had a reasonably good chance of success on appeal, particularly in light of Mr. Ward's credible testimony that he would not have advised Respondent that his chances of success on appeal were good. Tr. 312–13. In short, we agree with the Hearing Committee that the letter to the heirs was a deceptive effort to exploit their interest in getting their inheritances promptly in order to extract additional fees from them, and that Respondent's representation to the Probate Court that the Estate funds "could be distributed" and his representation to the heirs that he could not distribute the undisputed funds until the appeal was decided were "intentional misrepresentations." Report and Recommendation of Ad Hoc Hearing Committee ("H.C. Rpt.") at 39; FF 91. Indeed, the Court of Appeals held in a related case that Respondent's actions in sending the letter and attempting to obtain the heirs' consent to his additional fee placed his own economic interests above those of the heirs and breached his fiduciary obligations. *See Estate of Green v. Loewinger,* 912 A.2d 1198, 1209–10 (D.C. 2006).

9. Seven of the heirs agreed to accept Respondent's offer for a reduced immediate distribution and Respondent issued checks to five of the heirs in February 1999 and to the sixth in September 1999.[7]

---

6. The Hearing Committee stated in its Report that Mr. Ward was " 'sure' that he went over the substance of the motion with Respondent." FF 32. We believe that finding is not supported by substantial evidence, given the context in which the word "sure" was used. Mr. Ward testified that "he was sure he must have" (Tr. 279) gone over the document with Respondent, which generated a question from Bar Counsel: "You're not sure?" Mr. Ward responded: "I can't imagine I would have spent an undue amount of time going over this with him because it's not that complicated to me. Maybe it was complicated to Judge Long. She waited until January to sign the Order." Tr. 280.

7. There is some question whether the seventh heir was actually an heir and entitled to any distribution. The Hearing Committee did not resolve the question, finding that the issue was not material to the issues before it. H.C.

FF 43–45. These checks did not include any interest that had accrued on the Estate assets during the period while the Estate was being administered. *Id.* Respondent did not distribute any funds to the remaining heirs until October and December 2000, some fourteen to sixteen months after the Probate Court approved the Final Accounting in July 1999. FF 50, 59–60. At least three of the heirs did not receive any distributions. FF 61. In addition to disbursing the funds late, Respondent did not disburse the interest that had accumulated on the Estate funds. *Id.*

10. Respondent never prosecuted the appeal. FF 48. The only steps he took to pursue the appeal were to file motions for extensions of time to file his brief. FF 47. On April 6, 2000, Respondent moved to dismiss the appeal, advising the Court of Appeals that the underlying issues "ha[d] been resolved with most" of the heirs. FF 49 (quoting BX F17 at 183). On April 14, 2000, the Court of Appeals dismissed Respondent's appeal. FF 49.

11. During 1999, Respondent paid himself $9,458.16 more than the Court authorized and, in December 2000, he transferred an additional $20,000 to his personal account. FF 62–65. He returned the $20,000 to the Estate ten days later, on the eve of a hearing before the Probate Court to consider his failure to file the receipts from the heirs demonstrating his distribution of their inheritances. FF 66. The Hearing Committee found that Respondent's action in taking the $9,458.16 was an intentional misappropriation. H.C. Rpt. at

34–37. The Committee further found that Respondent's withdrawal of the $20,000 was negligent and that the taking of the funds was a mistake. *Id.*

12. On December 12, 2000, the Probate Court removed Respondent as Successor Personal Representative, appointed Kenneth Loewinger, Esquire, as the Second Successor Personal Representative, and referred Respondent's handling of the Estate to Bar Counsel. FF 67; BX F24. Upon his removal, Respondent relatively promptly transferred to Mr. Loewinger approximately $42,700 in money market funds held by the Estate. FF 68. However, he never turned over the Estate's financial records, except for the Annual Accounting previously filed with the Probate Court. FF 69. In response to an inquiry from Bar Counsel, Respondent initially claimed that his files were the same as the Probate Court's file, and that the Court's file was available for copying. FF 70. He subsequently advised Bar Counsel that his house and car had been broken into and his records were in shambles. FF 72. At the disciplinary hearing, Respondent testified that he had turned over his files following his removal as Successor Personal Representative. FF 75. The Hearing Committee found that testimony to be false. *Id.*[8]

13. In response to a motion from Mr. Loewinger, the Probate Court entered an order requiring Respondent and his surety to repay $9,458.16 plus interest of $1,702.47 to the Estate. FF 80–87. The Court concluded that Respondent had "intentionally misled the beneficiaries for his

Rpt. at 15 n. 2. We agree that the issue is not material.

**8.** Mr. Loewinger ultimately subpoenaed the Estate's records from the banks that Respondent had used and, after an independent audit, determined that the Estate was short

$14,578.13. FF 77–78. The Hearing Committee could not verify that conclusion, and held that the Estate was short the $9,458.16 attributable to Respondent's unauthorized fees taken in 1999. FF 79. Bar Counsel has not challenged that finding, and we accept it.

benefit by suggesting" that they had to wait until the conclusion of the appeal before they could receive their share, and that he had "concealed the existence of the agreements from [Mr. Loewinger] and the Court for more than two years." FF 87 (quoting BX F34 at 290). Respondent did not pay the judgment; his surety did. FF 89.[9] Respondent and his surety unsuccessfully appealed the Probate Court's decision. FF 90–95.

14. On October 24, 2008, the Probate Court entered judgment of $28,805.57 against Respondent in favor of Mr. Loewinger for the difference between the amount the Court awarded Mr. Loewinger for his fees and the amount paid by Respondent's surety. FF 96. That judgment remains outstanding. *Id.*

### III. *Conclusions of Law*

The Hearing Committee found that Bar Counsel had established by clear and convincing evidence that Respondent violated:

Rule 1.1(b) in not discharging his obligations as a personal representative with the skill and care generally afforded by other lawyers in similar matters in various ways;

Rule 1.3(c) in not acting with reasonable promptness in disbursing to the heirs their inheritance;

Rule 1.5(a) in assessing an unreasonable fee;

Rule 1.15(a) by intentionally and negligently misappropriating Estate assets and commingling Estate funds with his personal accounts;

Rule 1.15(a) by not maintaining adequate records concerning his service as personal representative and not retaining adequate records for a period of five years;

Rule 1.15(b) by not distributing Estate funds promptly or to all of the heirs;

Rule 1.16(d) by not taking steps to protect the Estate's interests in a timely manner and by not surrendering the Estate's property and records to the successor personal representative upon his removal as a personal representative;

Rule 8.4(c) by engaging in conduct involving dishonesty in connection with his efforts to recover the fees disallowed by the Probate Court; and

Rule 8.4(d) in seriously interfering with the administration of justice by filing a notice of appeal for the purpose of extracting concessions from the heirs, by seeking extensions of time to file his brief when he had no intention of filing a brief and by not turning over the Estate records to Mr. Loewinger, thereby requiring him to recreate them.

H.C. Rpt. at 34–44. We concur with these conclusions, but not entirely on the same grounds.[10]

---

**9.** It is not entirely clear from the record whether the entire judgment was paid by the surety or whether the surety paid the amount obligated under its bond. *Compare* Tr. 273–74 (Ward) (noting only that the bonding company "paid up to the ... max") *with* R. Brief at 13 (stating that the "judgment was ultimately satisfied by" the bonding company) *and* Bar Counsel's Brief ("B.C. Brief") at 28 (quoting H.C. Rpt. at 28) (stating that "[t]he bonding company paid the judgment").

**10.** We also agree that Bar Counsel did not prove a violation of Rule 4.3(a). H.C. Rpt. at 44–45. The Hearing Committee concluded that the letter to the heirs did not contain legal advice. *Id.* at 45. Bar Counsel has not excepted to that conclusion, and we cannot find that it was clearly erroneous.

## A. Respondent's Defense of Advice of Counsel

Respondent generally defends his actions with respect to the more serious charges by arguing that he acted pursuant to the advice of counsel. R. Brief at 23–30. The Hearing Committee rejected that defense. H.C. Rpt. at 32–34. We do as well.

As the Hearing Committee found, while Respondent sought the advice of counsel, he followed it only in part, straying in ways that resulted in the charges Bar Counsel filed. Mr. Ward recommended that Respondent file an appeal to allow Respondent time to negotiate with the heirs to increase his compensation above the amount allowed by the Probate Court. However, he did not advise Respondent to misrepresent that the January 26, 1999, Court Order precluded him from releasing the inheritances unless the heirs agreed to his proposal, nor did Mr. Ward advise him to misrepresent his chances of success on appeal, to delay paying the heirs their inheritances once the Final Accounting was approved, to withhold the inheritances due some of the heirs or to take fees without Court approval. There is also no evidence to support a finding that Mr. Ward advised Respondent that he could keep the interest earned by the Estate as his fee rather than disburse those funds to the heirs. Thus, even assuming *arguendo* that reliance on the advice of counsel is a defense to a disciplinary charge,[11] Respondent cannot rely on that defense here. His counsel did not advise him to engage in the conduct that lies at the heart of this case.

## B. Misappropriation and Misrepresentation—Rules 1.15(a) and 8.4(c)

The Hearing Committee found that Respondent intentionally misappropriated Estate funds when he withdrew $9,458.16 more in legal fees from the Estate than the Probate Court authorized. H.C. Rpt. at 34–37. Personal representatives were at that time required to obtain Court approval before taking their fees from Estate assets, FF 14, and since Respondent did not have the necessary court approval, he was guilty of misappropriation. *See, e.g., In re Ray,* 675 A.2d 1381 (D.C.1996); *In re Travers,* 764 A.2d 242 (D.C.2000).

Respondent argues that there was no misappropriation because the heirs could, and did, consent to his taking the additional sums. R. Brief at 17–20. He contends that *Estate of Grealis,* 902 A.2d 821 (D.C. 2006), and *Estate of Wilson,* 935 A.2d 323 (D.C.2007), establish that the heirs of an estate can compensate the personal representative from their personal assets without court approval. Those cases are distinguishable on their facts; in both, the compensation came from the personal assets of the heirs prior to any distribution from the estates. Here, Respondent took his compensation from Estate funds before distributing the funds to the heirs. In its decision in Respondent's civil case, the Court indicated that there was some question whether, under the law of the District of Columbia in effect at the time Respondent served as a successor personal representative, a personal representative could collect additional compensation from the heirs without Probate Court approval. *See Estate of Green,* 912 A.2d at 1208 n. 33. Consequently, it is not clear whether Respondent's actions with respect to the

---

11. *See In re Soininen,* 853 A.2d 712, 717 (D.C. 2004) (rejecting defense on, *inter alia,* grounds that advice of counsel was "too good to be true"); *In re Mba–Jonas,* 993 A.2d 1071, 1076 (D.C.2010) (rejecting defense on grounds that the attorney should have verified that a section 14(g) Affidavit was sufficient, rather than relying on advice of counsel.)

heirs who agreed to his proposal were proper under the applicable probate statute.

However, even if Respondent could enter into such agreements,[12] he could not do so by misrepresenting the Probate Court's Order and by breaching his fiduciary obligations to the heirs. Respondent's letter to them was rife with false and misleading statements designed to induce their consent to his request for added fees. The letter falsely stated that he could not distribute any amounts until his appeal was decided by the Court of Appeals, unless the heirs consented to his additional fee request. FF 37. Respondent also stated that he believed that he had a "reasonably good" prospect of success, when he had no basis for such a belief.[13] FF 40 (quoting BX F19 at 187). By stressing that the reduction in the amount they would receive was small, that they were unlikely to get more by waiting until resolution of the appeal because it was meritorious, and that waiting would substantially delay their receipt of their inheritance, Respondent clearly played on the heirs' obvious interest in receiving their inheritance as soon as possible. The Hearing Committee found the February letter amounted to a fraudulent inducement to enter into a contract. H.C. Rpt. at 36. We do not have to decide whether the Hearing Committee's finding of misappropriation on this basis was correct; it is sufficient that the Court of Appeals found that the side agreements were invalid to support the charge of misappropriation, because they constituted a breach of Respondent's fiduciary obligations to the heirs. *See Estate of Green,* 912 A.2d at 1209–10. Thus, even assuming that he thought he had the consent of some of the heirs to take additional compensation, that consent was invalid since he obtained it by breaching his fiduciary obligations.

Further, we find that the misappropriation was intentional. Respondent withdrew Estate funds knowing he did not have the necessary court authorization. *See In re Bach,* 966 A.2d 350, 365 (D.C. 2009) (appended Board report) (finding violation of Rule 1.15 where respondent withdrew conservator's fees without first receiving court approval, in contravention of statute and Probate Court rule requiring prior court approval). Further, Respondent not only misrepresented the facts, but abused his fiduciary obligations and exploited the heirs' obvious interest in receiving their inheritance as soon as possible by stressing that the reduction in the amount that they would receive would be small, that they were unlikely to get more by waiting because the appeal was meritorious, and that waiting would substantially delay their receipt of their inheritance.

---

12. *Compare In re Evans,* 578 A.2d 1141, 1149–50 (D.C.1990) (per curiam) (appended Board report) (concluding that "side agreements" between personal representative and heirs regarding withdrawal of attorney's fees from estate assets are permissible, so long as consent of all heirs is obtained) *with Estate of Green,* 912 A.2d at 1208–10, 1208 n. 33 (invalidating side agreement based on Respondent's breach of fiduciary duty while simultaneously acknowledging existence of side agreements but "leav[ing] for another day, and another case, any discussion of the specific requirements for a valid side agreement.").

13. That statement is inconsistent with Mr. Ward testimony that "he did not think" he advised Respondent that he was likely to succeed on appeal, Tr.312–13, which is consistent with the case law. *See, e.g., Godette v. Estate of Cox,* 592 A.2d 1028, 1032 (D.C.1991) (citing *Williams v. Ray,* 563 A.2d 1077, 1080 (D.C.1989)) ("A trial court's decision to deny compensation, if based upon application of the statutory factors specified in D.C.Code § 20–751(c), is an exercise of discretion that we will not disturb absent abuse.").

Thus, the taking of the funds was manifestly more than a negligent or inadvertent action. In short, the misappropriation was intentional.

We agree with the Hearing Committee's finding that Respondent violated Rule 8.4(c) in obtaining the consent of some of the heirs by representing that he could not distribute the undisputed portion of the Estate until his appeal was resolved, H.C. Rpt. at 38–39, and also find that he violated Rule 8.4(c) by asserting that he had a reasonable chance of success on appeal. As the Court has made clear: "[t]here is nothing more antithetical to the practice of law than dishonesty, and it cannot be condoned by those charged with protecting the public from unscrupulous conduct by lawyers." *In re Daniel,* 11 A.3d 291, 300 (D.C.2011); *see also In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc) (quoting *In re Reback,* 513 A.2d 226, 231 (D.C.1986) (en banc)) ("Lawyers have a greater duty than ordinary citizens to be scrupulously honest at all times, for honesty is 'basic' to the practice of law."). Respondent manifestly did not live up to the standard expected of a lawyer.

Even if Respondent had obtained the valid consent of the heirs who agreed to his proposal, their portion of the disallowed fees equaled $7,337.24, or $2,120.82 less than the amount he took. H.C. Rpt. at 38. In his Reply Brief, Respondent argues that the consenting heirs impliedly agreed to his taking additional fees from the interest earned on the Estate funds, since he advised them in his February 1999 letter that he would retain those funds as additional compensation. Respondent's Reply Brief ("R. Reply Brief") at 2; FF 42. Since he calculates that their portion of the interest equaled approximately $2,165, Respondent asserts that he was authorized to take the additional

$2,120.82. R. Reply Brief at 2. Respondent did not make this argument before the Hearing Committee and thus arguably has waived it. In all events, the argument is meritless. He never advised the heirs of the amount of interest earned or the amount of money they were giving up. Thus, any consent was not given knowingly. More importantly, however, he did not ask the heirs for consent; rather, he simply told them he was taking the interest. The letter stated:

> Lastly, I would be remiss if I did not inform you that the estate has received interest on the outstanding funds balances, however, I have put in a considerable amount of time on the estate after I filed my Request of Compensation so that the additional interest is largely canceled out by my additional charges. Thus, the matter of my appeal is not affected by post amount interest or post amount charges for my time.

BX F19 at 188.

### C. *The Other Rule Violations Charged*

The other rule violations can be addressed briefly, since their resolution will not materially affect the sanction if the Court upholds our conclusion that Respondent committed intentional misappropriation.

1. *Rule 1.1(b)—Failure to Serve a Client With the Skill and Care Commensurate With That Afforded by Other Lawyers in Similar Matters.*

The Hearing Committee found that Respondent did not exercise the skill and care required by Rule 1.1(b) when

> he intentionally misappropriated money from the Green Estate, misled the Probate Court as to the distribution of the undisputed Estate assets, misled the heirs as to the import of the Probate Court's January Order, and failed to

keep complete records of his disbursements, requiring the Successor Personal Representative, Mr. Loewinger, to spend substantial time and expense to recreate Respondent's activities

H.C. Rpt. at 42. We agree with the Hearing Committee that Respondent violated Rule 1.1(b) by failing to keep complete records of the disbursements. In fact, Respondent does not specifically challenge the Hearing Committee's finding of a violation before the Board. However, we disagree with the Hearing Committee's conclusions that Respondent also violated Rule 1.1(b) by intentionally misappropriating funds and misleading the heirs and the Probate Court. Rule 1.1(b) requires clear and convincing evidence of a lack of skill and care and none of these derelictions demonstrated a lack of skill or care in serving as a Personal Representative. Rather, they are violations of Rule 1.15(a), Rule 1.15(b) and Rule 8.4. *See supra* at 11–14. Similarly, Respondent's failure to remit the interest on the Estate funds to the heirs did not demonstrate a lack of skill or care but constituted a violation of Rule 1.5(a), as we conclude below. *See infra* at 19–20.

2. *Rules 1.3(c) and 1.15(b)—Failure to Act With Reasonable Promptness in Representing a Client and Failure to Deliver Property Promptly to Clients or Third Persons*

The Hearing Committee found that Respondent violated these rules by not making any distributions to three of the heirs, by delaying distributions to eight other heirs for over a year, by withholding approximately $7,335 from the seven heirs who agreed to his proposal, and by not paying the interest earned on the Estate funds to the heirs at all. H.C. Rpt. at 40–41. Respondent defends his actions on the grounds that he acted on advice of counsel.

*See* R. Brief at 23–30. However, Mr. Ward never advised Respondent that he could refuse to distribute the undisputed amounts unless the heirs agreed to his request for additional compensation, nor did he advise Respondent that he could use the leverage of withholding the inheritances to secure the heirs' consent to increase his fee. H.C. Rpt. at 32–34. We agree with the Hearing Committee that Respondent violated Rules 1.3(c) and 1.15(b).

3. *Rule 1.15(a)—Commingling and Negligent Misappropriation*

The Hearing Committee also found that Respondent violated Rule 1.15(a) when he withdrew the $20,000 from the Estate in December 2000, deposited it into one of his own accounts, and returned it to the Estate ten days later. H.C. Rpt. at 37. It credited Respondent's statement that the withdrawal was a mistake and thus found that the taking amounted to negligent, rather than intentional or reckless, misappropriation. *Id.* (citing RX 1 at 8). The Hearing Committee further found that Respondent's actions in withdrawing the $20,000 and depositing it into one of his own accounts constituted commingling in violation of Rule 1.15(a). H.C. Rpt. at 37.

With respect to the finding of commingling, there is no question that Respondent took the Estate funds and, before he returned them, deposited them in one of his own accounts. Respondent admitted "the $20,000.00 from the Estate money market account ... was mistakenly deposited into [Respondent's] personal account...." *See* R. Brief at 30. However, Respondent argues that he should not be disciplined for commingling on the grounds that the funds were taken for a *de minimis* period of time. R. Brief at 30–31. The cases he cites in support of that argument (*In re Hessler*, 549 A.2d 700 (D.C.1988) and *In re*

*Thompson,* 579 A.2d 218 (D.C.1990)), do not support his claim. In *Hessler,* the respondent was found to have commingled funds when he placed client funds in his operating account, and in *Thompson* the respondent was found to have both commingled and intentionally misappropriated funds. Further, in *In re Rivlin,* 856 A.2d 1086 (D.C.2004) (per curiam), the Court upheld the Board's conclusion that commingling "for *a short period of time* before being redeposited into a more appropriate account," *id.* at 1095 (appended Board report) (emphasis added), was not a defense to a commingling charge.

The more significant issue is whether the taking involved merely negligent versus intentional or reckless misappropriation. The Hearing Committee concluded that the taking was a mistake based on its assessment of Respondent's credibility. H.C. Rpt. at 37. We are required to " 'accept the hearing committee's factual findings if those findings are supported by substantial evidence in the record, viewed as a whole.' " *In re White,* 11 A.3d 1226, 1248 n. 11 (D.C.2011) (per curiam) (appended Board report) (quoting *In re Micheel,* 610 A.2d 231, 234 (D.C.1992)); *see also* Board Rule 13.7 (giving the Board the authority to "affirm, modify, or expand the findings and recommendation of the Hearing Committee" when not supported by substantial evidence in the record). Moreover, "[s]uch deference to the Hearing Committee's factual findings and credibility determinations is especially heightened where the determinations are based on direct observation of the Respondent." *White,* 11 A.3d at 1248 n. 11 (appended Board report) (citing *In re Anderson,* 778 A.2d 330, 341–42 (D.C.2001); *In re Temple,* 629 A.2d 1203, 1208–09 (D.C.1993)). We have no basis to question the Hearing Committee's credibility determination and

conclusions on this issue and agree with it that Respondent's violation of Rule 1.15(a) did not rise to the level of a reckless or intentional misappropriation.

### 4. Rules 1.15(a) and 1.16(d)—Failure to Maintain Complete Estate Records

The Hearing Committee concluded that Respondent violated these rules by failing to maintain complete records concerning his handling of the Estate. H.C. Rpt. at 41–42. It held, as Bar Counsel's expert testified, Tr. 137, that Respondent's records should have consisted of more than the material in the Court file, and that, by not turning over complete files to Mr. Loewinger, Respondent failed to " 'take timely steps to the extent reasonably practicable to protect [his] client's interests.' " H.C. Rpt. at 41–42 (quoting Rule 1.16(d)). Respondent does not dispute the testimony of Bar Counsel's expert but simply maintains that, since he testified that he turned over all the records, we cannot find that he violated Rule 1.15(a) "or any other of the District of Columbia Rules of Professional Conduct." R. Brief at 36. He argues in the alternative that any failure to turn over the appropriate records "was the consequence of ... burglaries to [Respondent's] home and automobile...." *Id.*

Respondent's claim that his testimony precludes an adverse finding is disingenuous, at best. The Hearing Committee clearly can decide to credit a witness's testimony in one respect, but not another. Indeed, as noted above, we are required to defer to Hearing Committee credibility findings if they are supported by substantial evidence on the record. That standard is clearly met here. The Hearing Committee observed Bar Counsel's expert witness and Respondent, credited the expert's testimony and found that Respondent's testimony was not credible. We have no basis

on this record to conclude otherwise. Accordingly, we agree with the Hearing Committee that Respondent violated Rules 1.15(a) and 1.16(d) when he failed to maintain complete records.

### 5. Rule 8.4(d)—Serious Interference With the Administration of Justice

In order to establish a violation of Rule 8.4(d), Bar Counsel is required to demonstrate that the conduct was improper, that the conduct bears directly on the judicial process, and that the conduct taints the process in more than a *de minimis* way. *See In re Travers,* 764 A.2d 242, 248 (D.C. 2000) (quoting *In re Hopkins,* 677 A.2d 55, 60–61 (D.C.1996)). The Hearing Committee found that Respondent's self-help efforts seriously interfered with the administration of justice in several ways. H.C. Rpt. at 43–44. We do not agree with all of its conclusions, but concur that Respondent violated Rule 8.4(d) when he (a) misled the Probate Court into believing that he would distribute undisputed amounts to the heirs, (b) noted an appeal that he had no intention of pursuing and sought extensions of time to file his brief, (c) requested that the Probate Court make its decision final so that he could appeal, (d) failed to disburse to the heirs their inheritances once the Final Accounting was approved, and (e) failed to turn over meaningful Estate records. These actions, individually and collectively, interfered with the proper and efficient operation of the Probate Court and probate system.

### 6. Rule 1.5(a)—Unreasonable Fee

The Probate Court found that Respondent's initial fee request was "excessive in numerous respects" on the grounds that he rounded-up the requested fee and that he devoted more time to the matter than

was warranted. FF 19–21; BX F13 at 157, 159, 167. It also disallowed some expenses and further reduced Respondent's fee as a sanction for "gross overbilling and lack of documentation." FF 19–21; BX F13 at 159–67. The Hearing Committee concluded, based on the Probate Court decision, that Respondent had charged an unreasonable fee and that he had violated Rule 1.5(a). H.C. Rpt. at 40. We are reluctant to follow that conclusion lest we establish a precedent that any time the Probate Court disallows a portion of a fee request as unreasonable, a rule violation follows automatically, particularly where an additional payment is provided by the heirs or a third party. Among other things, the factors bearing on whether a request for a fee is unreasonable in a Probate proceeding may not be the same as those applicable in a disciplinary proceeding. *Cf. Estate of Green,* 912 A.2d at 1208 n. 33. That issue was not briefed by the parties and we believe it best to leave the resolution to another day, especially since the resolution of the issue will not affect our recommended sanction.

However, it is clear that Respondent violated Rule 1.5(a) when he took the interest as a fee. The Probate law in effect with respect to Mr. Green's estate required Respondent to obtain Court approval before he could take his fee. Rule 1.5(f) makes any fee prohibited by law *per se* unreasonable. Since the Court never approved Respondent's taking the interest as part of his fee, and since we have found that the heirs did not consent to his taking the interest as part of his fee (assuming they could consent),[14] his taking of the interest violated Rule 1.5(a).

### IV. Sanction

Having found that Respondent intentionally misappropriated approximately

14. *See supra* at 11–12, 11 n. 13.

$9,500 of the Estate's funds, we recommend that he be disbarred. Under the holding in *In re Addams*, 579 A.2d 190 (D.C.1990) (en banc) and its progeny, disbarment is the presumptive sanction for misappropriation that is more than negligent. There are no extenuating or extraordinary circumstances pertaining to Respondent that might warrant a lesser sanction. To the contrary, Respondent's misrepresentations and misappropriation were for his personal gain, reinforcing our conclusion that disbarment is the appropriate sanction in this case. Further, we have rejected Respondent's defense that he acted on the advice of counsel and that the heirs consented to his taking the funds because his counsel did not advise him to undertake the steps that lie at the heart of Bar Counsel's case and, to the extent a few of the heirs consented, the consent was obtained in violation of his fiduciary obligations. Moreover, even accepting Respondent's claim that some heirs consented, the amounts he took exceeded the amounts to which they agreed. The only potentially unique circumstance is that this was his first case involving the administration of an estate. That lack of experience neither justifies nor warrants an exception to the *Addams* rule of presumptive disbar-

ment for a misappropriation resulting from more than simple negligence. The appropriate sanction is disbarment.

### V. *Conclusion*

The Board recommends that the Court find Respondent to have violated Rules 1.1(b), 1.3(c), 1.5(a), 1.15(a), 1.15(b), 1.16(d), 8.4(c), and 8.4(d). We further recommend that the Court find Respondent to have engaged in intentional misappropriation and, consequently, that he be disbarred.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /TDF/

Theodore D. Frank

Dated: January 26, 2012

All members of the Board concur in this Report and Recommendation except Ms. Butler and Mr. Barker, who did not participate.