*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-BG-0606

IN RE OSCAR S. MAYERS, JR., RESPONDENT.

A Suspended Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 407619)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-515-08)

(Submitted March 11, 2015[1]                          Decided May 21, 2015)

Os*car S. Mayers*, *Jr.*, pro se.

*Wallace E. Shipp, Jr.*, Bar Counsel, *Jennifer P. Lyman*, Senior Assistant Bar Counsel, and *Elizabeth A. Herman*, Deputy Bar Counsel, were on the brief for the Office of Bar Counsel.

Before WASHINGTON, *Chief Judge*, and GLICKMAN, *Associate Judge*, and BELSON, *Senior Judge*.

PER CURIAM:  The Board on Professional Responsibility (the Board) recommends disbarment of Oscar S. Mayers, Jr., respondent, based on numerous violations of the District of Columbia Rules of Professional Conduct, the most

---

[1] Respondent did not appear for the oral argument scheduled for March 11, 2015.  Therefore, we treat the case as submitted on the briefs.

serious of which is reckless misappropriation of client funds.  We agree with the Board's recommendation and order that respondent be disbarred from the practice of law in the District of Columbia and that, as a condition of reinstatement, he must pay restitution in the amount of $1,500, plus interest at the legal rate from the date respondent deposited Shepard's check, to the Estate of Alexander Shepard or the Client's Security Fund.

## I.

Respondent has been a member of the Bar of the District of Columbia Court of Appeals since February 6, 1987.  On March 15, 2006, in connection with an unrelated disciplinary matter involving dishonesty to the court, altering evidence, and criminal activity, the Board ordered respondent, who at that time was voluntarily not practicing law, to "give Bar Counsel 90-days' advance notification of his intention to resume the practice of law . . . and to submit a medical report . . . demonstrating his fitness to resume practice" before doing so.

In April 2007, respondent consulted with Alexander Shepard, a former member of the Metropolitan Police Department of the District of Columbia (MPD), regarding a potential medical malpractice claim and potential claims against MPD.  Shepard provided respondent with 1,500 pages of medical records;

signed a retainer agreement; and gave respondent a check, dated April 22, 2007, in the amount of $1,500, which contained the words, "MAY-JULY 2007 MONTHLY LEGAL PYMTS PER AGREEMENT" on the memo line. Respondent conducted research and provided Shepard with legal advice regarding the viability of his claim, possible damages, the applicable statute of limitations, and the standard of care for medical malpractice cases. Respondent deposited the check into his personal account and failed to keep adequate records regarding the use of the money deposited. Respondent's account was neither a trust account nor an IOLTA account.

Respondent had not provided Bar Counsel with the required ninety-day prior notification and medical report, as required by the Board's March 2006 order. Pursuant to the Board's recommendation in the underlying disciplinary case, this court suspended respondent's license to practice law for eighteen months, effective March 20, 2008.[2] On March 31, 2008, respondent filed an affidavit with this court in connection with his suspension, in accordance with D.C. Bar Rule XI, § 14 (g), stating that he did not have any clients, client property or papers, or active matters. He did so almost one year after his above-mentioned meeting with Shepard.

---

[2] This court found that respondent had committed misconduct by "submitting altered checks and making false statements to [the] trial court" during a child support proceeding. *In re Mayers*, 943 A.2d 1170 (D.C. 2008).

On November 5, 2008, Shepard sent a certified letter to respondent terminating their relationship after he found out that respondent's license had been suspended. Shepard requested a refund of all funds paid and that respondent mail his entire file to one Joseph Thomas within ten days. Shortly afterwards, Shepard filed a complaint with Bar Counsel stating that he had retained respondent for representation in a medical malpractice case, but he was unaware that respondent was prohibited from practicing law. On January 28, 2009, Bar Counsel requested that respondent provide an explanation of his actions regarding the return of Shepard's medical records. In response, respondent indicated that he had returned the medical records on February 10, 2009.[3]

Bar Counsel filed specification of charges alleging that respondent had, among other violations, deposited client's funds into his personal checking account, but failed to keep a record of the deposit in violation of Rule 1.15 (d).[4]

---

[3] As part of its investigation, Bar Counsel subpoenaed respondent's computer so that a third party company could create a mirror image of the computer. Respondent filed a motion to quash the subpoena and while that motion was pending he gave the computer to Geeks on Call, a computer repair company. Geeks on Call informed respondent that the computer's hard drive could not be repaired and respondent allowed the computer to be destroyed without notifying the Hearing Committee.

[4] The specification of charges also alleged that respondent provided a false affidavit to the court which stated that he did not have any clients or client property; held himself out as an attorney while failing to disclose that he was prohibited from practicing law; failed to refund unearned fees and return Shepard's

(continued . . .)

On April 28, 2011, the Hearing Committee held an evidentiary hearing in which respondent testified that the $1,500 was not client funds because Shepard was not his client and was used, in part at least, as reimbursement for the money he had spent to have Shepard's medical records reviewed by Dr. Roy Herron.[5] The Hearing Committee did not credit respondent's testimony, but found that the funds were advance payment for legal fees and respondent should have held them in "trust until they were spent on Shepard's behalf." The Hearing Committee found, by clear and convincing evidence, that respondent recklessly misappropriated client funds, in violation of Rule 1.15 (a); failed to treat unearned fees and unincurred costs as client property, in violation of Rule 1.15 (d); and failed to return such funds after termination of the attorney-client relationship, in violation of Rule 1.16 (d).[6]

_____

(. . . continued)

medical records; failed to adequately communicate with Shepard; and obstructed opposing party's access to evidence by destroying the computer, which he knew was the subject of Bar Counsel's subpoena.

[5] See footnote 9, which quotes from respondent's letter to Bar Counsel in which he stated that he used the entire $1,500 to pay the expert witness.

[6] The Hearing Committee also found that respondent knowingly made a false statement of fact to the court and Bar Counsel when he filed the above-mentioned false affidavit, in violation of Rules 3.3 (a)(1) and 8.1 (a); knowingly disobeyed his obligation to inform Bar Counsel that he had resumed practicing, in violation of D.C. Bar Rule XI, § 2 (b)(3); practiced law while unauthorized to do so, in violation of Rule 5.5 (a); obstructed Bar Counsel's access to evidence and knowingly disobeyed Bar Counsel's subpoena by allowing his computer to be

(continued . . .)

The Board adopted virtually all of the Hearing Committee's findings and concluded that respondent's "recklessness in his misappropriation of Shepard's $1,500" was a serious violation of the rules.[7] The Board recommends disbarment of respondent and payment of "restitution in the amount of $1,500, plus interest at the legal rate from the date respondent deposited Shepard's check, to the Estate of Alexander Shepard and/or the Client's Security Fund."[8]

## II.

Respondent argues that the specification of charges should have been dismissed pursuant to Superior Court Rules of Civil Procedure 25 because it was based on a "nonexistent person," referring to the fact that Shepard died a year and a half before the Committee issued its recommendation. Respondent contends that

_____

(. . . continued)

destroyed, in violation of Rule 3.4 (a) and (c); and engaged in the criminal conduct of dishonesty that seriously interfered with the administration of justice, in violation of Rule 8.4 (b), (c), and (d).

[7] The Board did not find that respondent had, as alleged, violated Rule 3.3 (a)(1), pertaining to the submission of a false affidavit to the Board, or Rule 8.4 (b), regarding respondent's intention to destroy his computer while it was under subpoena.

[8] Shepard died in January 2012, before the Committee issued its report and recommendation in June 2013.

Rule 25 requires mandatory "dismissal of an action when a suggestion of death is made . . . and there is not a substitution of the parties made within 90 days." Super. Ct. Civ. R. 25. Bar Counsel counters by arguing that "Shepard's death is irrelevant to the question whether [r]espondent violated disciplinary rules" and although the specification of charges mentions Shepard's name, he is not a party in the case.

We are unpersuaded by respondent's argument. Rule 25 of the Superior Court's Rules of Civil Procedure does not apply to bar disciplinary proceedings and, in any event, the complainant is not a party for whom substitution would be required. *See Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C. 2010) (en banc) (citing Super. Ct. Civ. R. 1) ("[T]he rules of civil procedure only govern procedure in suits of a civil nature."). The purpose of disciplinary proceedings is not to redress a complainant's harm but to determine whether a member of the bar has engaged in conduct that violates the rules of professional responsibility and calls into question whether the member should be permitted to practice law. Thus, Shepard's death does not bear upon the Board's determination of respondent's misconduct.

## III.

Respondent argues next that the Board's conclusion that he misappropriated client's funds is not supported by the record. Respondent contends that the record lacks any evidence of "reckless misappropriation of client funds" because the funds were used in preparation of Shepard's case. Bar Counsel argues that the Board's conclusion was correct because it was based on the "Hearing Committee's finding that respondent was not credible when he testified . . . that the $1,500 were reimbursement [of] expenses . . . incurred."

"This court must 'accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" *In re Pye*, 57 A.3d 960, 962 (D.C. 2012) (quoting *In re Cleaver-Bascombe*, 986 A.2d 1191, 1194 (D.C. 2010)). "We recognize, at the same time, that the Board on Professional Responsibility has 'substantial expertise in the area of attorney discipline.'" *In re Abrams*, 689 A.2d 6, 9 (D.C. 1997) (en banc) (quoting *In re Ray*, 675 A.2d 1381, 1385 (D.C. 1996)). "The Board's views as to

the issue before us, while not dispositive or presumptively dispositive, merit respectful consideration." *Id.*

Although the Board found that respondent violated several rules of professional responsibility, respondent focuses only on the Board's finding that he misappropriated client funds. That finding, however, is supported by the record. "Rule 1.15 (a) states . . . that a lawyer shall hold property of clients . . . that is in the lawyer's possession in connection with a representation separate from the lawyer's own property and that such funds shall be kept in a separate account maintained in a financial institution." *In re Edwards*, 990 A.2d 501, 518 (D.C. 2010) (internal quotation marks omitted). "[M]isappropriation includes any unauthorized use of a client's funds entrusted to his or her lawyer . . . ." *Id.* Reckless "misappropriation reveal[s] an unacceptable disregard for the safety and welfare of entrusted funds." *In re Anderson*, 778 A.2d 330, 338 (D.C. 2001).

The record shows that Shepard made out a $1,500 check payable to respondent with "MAY-JULY 2007 MONTHLY LEGAL PYMTS PER AGREEMENT" written on the memo line. There was a $1,500 deposit placed into respondent's bank account on May 7, 2007. Fernando Fuentes, assistant branch manager of Capital One Bank, testified that the funds were deposited into respondent's personal bank account. *Anderson*, 778 A.2d at 338 (explaining that

reckless misappropriation exists where there is "indiscriminate commingling of entrusted and personal funds"). Respondent testified to receiving the check from Shepard, but did not remember the amount of the check or whether he deposited it into his account. However, respondent admitted to sending a letter to Bar Counsel which stated that the funds were used as reimbursement for the expense he incurred when he had Dr. Herron review Shepard's medical records.[9] Respondent also testified that he paid Dr. Herron some money, although he didn't charge him a particular fee, but respondent could not remember the specific amount. Respondent further stated that he had taken Dr. Herron out for lunch and dinner several times to discuss Shepard's potential case, but did not remember if those meetings cost $1,500. Respondent failed to provide any supporting evidence for his assertions, nor was there a $1,500 withdrawal from his bank account which would have corroborated that he paid the funds to Dr. Herron. Respondent's bank records for that period contain several withdrawals, none of which involve legal expenses, and show that the account balance fell below the amount of the check. Accordingly, we are satisfied that the Board's conclusion of reckless misappropriation was supported by substantial evidence in the record.

---

[9] In a letter to Bar Counsel of November 26, 2008, at page 5, respondent wrote: "Mr. Shepard offered to pay for this time of the expert in which he tendered a check for $1,500 which I forwarded on to the medical expert." In a subsequent letter of February 11, 2009, at page 5, respondent wrote: "Mr. Shepard never sent me any checks. The only check he sent was for the medical consultation in the amount of $1,500, there were no other checks."

**IV.**

Respondent also argues that Bar Counsel withheld discoverable evidence that Shepard was under investigation for tax fraud and that his bank accounts had been "levied by the [Internal Revenue Service]." Respondent admits that the investigation of Shepard's tax violation was public information, but argues that had Bar Counsel revealed this information he could have proven that Shepard's check was "bogus." Inconsistently, respondent admitted in testifying before the Hearing Committee that the $1,500 in question was used as reimbursement for the money he had spent to have Shepard's medical records examined by Dr. Herron. Respondent has not established how the information about a criminal investigation concerning Shepard would have supported his position or how he was prejudiced by not being informed about it.

**V.**

For the foregoing reasons, and in consideration of the entire record, we agree with the Board's recommendation. *See In re Addams*, 579 A.2d 190, 191 (D.C. 1990) (en banc) ("[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence."). Respondent is disbarred from the practice

of law in the District of Columbia and shall pay restitution in the amount of $1,500, plus interest at a legal rate from the date respondent deposited Shepard's check, to the Estate of Alexander Shepard or the Client's Security Fund, as a condition of reinstatement. For purposes of reinstatement, the period of disbarment shall run from the date that respondent files an affidavit in accordance with District of Columbia Bar Rule XI, § 14 (g).

*So ordered.*