*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-BG-0906

IN RE GEORGE A. TEITELBAUM, RESPONDENT,

A Member of the Bar of the District of Columbia Court of Appeals
(Bar Registration No. 370926)

On Report and Recommendation of the Board of Professional
Responsibility Ad Hoc Hearing Committee
Approving Petition for Negotiated Discipline
(DDN 2019-D161)

(Decided: October 5, 2023)

Before MCLEESE and DEAHL, *Associate Judges*, and WASHINGTON, *Senior Judge.*

WASHINGTON, *Senior Judge*: This is a negotiated discipline case. Under D.C. Bar R. XI, § 12.1(d), this opinion may not be cited as precedent in contested-discipline cases except as provided in D.C. App. R. 28(g). This opinion may, however, be cited as precedent in negotiated-discipline cases.

This appeal concerns a petition for negotiated discipline that involves misconduct that may merit a charge for an ethical violation that the petition did not include. In the amended petition here, respondent George A. Teitelbaum admitted to violating D.C. R. Pro. Conduct 1.15(a) by failing to keep complete records of account funds. The agreed-upon sanction reflects that charge. The stipulated facts

also reflect that the funds in the account were insufficient to meet the financial obligations Mr. Teitelbaum had to his client, although the representation did not result in any financial loss to his client. The Board on Professional Responsibility ("Board") argues that the fact that the account had insufficient funds established misappropriation of the funds, and therefore we must reject the negotiated disposition and order further factual development to assess if the recommended sanction is too lenient. The Office of Disciplinary Counsel ("ODC"), which co-filed the petition with respondent, counters that the sanction is appropriate because its "investigation did not uncover clear and convincing evidence" that the deficiency at issue was "negligent, reckless, or intentional." We conclude that a determination that Mr. Teitelbaum committed misappropriation in violation of the Rules of Professional Conduct would depend on the resolution of unsettled legal questions and on facts that do not amount to clear and convincing evidence of misappropriation. We also conclude that, under the circumstances of this case, proposed discipline that does not include a charge of misappropriation is not unduly lenient. We therefore approve the amended petition for negotiated discipline.

## I. Background

Respondent served as a co-personal representative of an estate being administered in the Probate Division of the Superior Court (hereinafter the "probate court"). The probate court appointed respondent as co-personal representative to assist José Morgan (one of the estate's legatees) in administering the estate. Among respondent's duties was disbursing the funds from the estate's bank account as follows: two $2,500 legacies with the remaining balance (after his own fees and costs) evenly divided among five legatees. Respondent submitted an accounting of the disbursements to the probate court,[1] which approved the disbursements. Respondent wrote checks to himself and the legatees in 2018. Subsequently, Morgan received notice that the account was overdrawn by $256.81, although the bank honored the final check to the final legatee and closed the account.

Respondent could not explain the overdraft to Morgan, he did not investigate it until ODC inquired, and his eventual explanation (that it was attributable to fees the bank agreed not to charge) could not be fully reconciled with the bank records. The bank was supposed to send monthly account statements to respondent and to Morgan as joint signatories on the account, but respondent did not receive them.

---

[1] Respondent's accounting mistakenly concluded that the account contained sufficient funds to cover the disbursements.

Those statements would have revealed any fees charged by the bank. Respondent avers that he occasionally sought copies of the bank statements from Morgan, but had stopped trying to obtain them from the bank after an "unsuccessful" but unspecified "effort." Instead, he relied on his firsthand knowledge of what funds were spent from the estate account by keeping the account's checkbook.

ODC opened an investigation into respondent's conduct after receiving a complaint from his former client. Respondent and ODC immediately engaged in the negotiated discipline process.[2] Ultimately, ODC found that its "investigation d[id] not reveal evidence that the overdraft involved misappropriation." Respondent admitted he failed to maintain complete financial records pertaining to the estate's bank account in violation of D.C. R. Pro. Conduct 1.15(a), a lesser offense than misappropriation under Rule 1.15(a).[3] As a result, the parties agreed

---

[2] The record does not indicate that ODC initiated formal disciplinary proceedings by charging respondent in a petition under oath. Negotiated discipline is available to attorneys who either are charged with misconduct in a petition filed under D.C. Bar R. XI, § 8(c), or are "the subject of an investigation by Disciplinary Counsel," but not facing charges. D.C. Bar R. XI, § 12.1(a); *see id.* § 8(b) ("Upon the conclusion of an investigation, Disciplinary Counsel may . . . institute formal charges."); *id.* § 8(c) ("Formal disciplinary proceedings before a Hearing Committee shall be instituted by Disciplinary Counsel by the filing of a petition [that] . . . . shall be sufficiently clear and specific to inform the attorney of the alleged misconduct.").

[3] Rule 1.15(a) encompasses both failures to keep complete records and the more serious violation of misappropriation, which carries a presumptive sanction of disbarment, at least where the misappropriation occurred with a culpable

to a sanction consisting of a 30-day suspension with proof of fitness for reinstatement, stayed in favor of one year of probation with conditions. ODC and respondent submitted their petition for negotiated discipline to the assigned Hearing Committee. The Hearing Committee recommended that this court approve the negotiated discipline. However, the Hearing Committee's report, and a confidential appendix to it, also recognized that whether respondent's conduct amounted to misappropriation was a "close question." Exercising our discretion under D.C. Bar R. XI, § 12.1(d), we sought the Board's views on the appropriateness of the negotiated disposition in light of the misappropriation question.

The Board recommended that the negotiated discipline be rejected because the stipulated facts established misappropriation. The Board called for further factual finding to determine respondent's state of mind or intent, which it contended would affect whether the agreed-upon sanction was too lenient. ODC responded by arguing that no misappropriation occurred here because that offense

---

mindset greater than negligence and was not mitigated by extraordinary circumstances. *See In re Schuman*, 251 A.3d 1044, 1050-53, 1055 (D.C. 2021); *In re Daniel*, 11 A.3d 291, 301 (D.C. 2011). Commingling funds also violates Rule 1.15(a), but is not relevant to this case and our analysis. *See, e.g., Schuman*, 251 A.3d at 1047 (evaluating charges of "commingling and intentional misappropriation of client funds" and "failure to keep proper records" brought under Rule 1.15(a)); *In re Gray*, 224 A.3d 1222, 1225 (D.C. 2020) (per curiam) (same).

requires an "unauthorized" use of funds, and here the probate court's order authorized the use of funds by approving (albeit based on respondent's mistaken representations about the account's funds) the disbursements that overdrew the estate's account. In response, the Board recognized that ODC's argument about the court order "authorizing" the disbursements "appears to be a question of first impression," but argued that ODC's interpretation was wrong as a matter of law. ODC replied by challenging the Board's analysis of the court-approval issue and arguing that it would be unfair to sanction respondent based on a theory of "first impression." Further, ODC highlighted that respondent and Morgan were joint signatories because both of their signatures were required on checks authorizing payments from the account. Therefore, ODC posited, when respondent's misconduct occurred in 2018, the law was unsettled as to whether he was "entrusted" with estate funds that he could misappropriate. *See In re Harris-Lindsey*, 242 A.3d 613, 620, 624 (D.C. 2020).

## II. Analysis

Our analysis proceeds in two parts. We first explain when we will reject a negotiated disposition for not stipulating a particular charge, and why we accept the disposition here despite it not stipulating a charge of misappropriation. We then address why the agreed-upon sanction for respondent's record-keeping

violation is "justified and not unduly lenient." *In re Harmon*, 268 A.3d 849, 849 (D.C. 2022) (per curiam).

**A. The Petition for Negotiated Discipline's Finding on Misappropriation**

The Board argues that we must reject the petition for negotiated discipline because its sanction would be unduly lenient. This alleged lenience stems from the petition's finding that ODC's "investigation does not reveal evidence that the overdraft involved misappropriation." That finding, the Board contends, is erroneous and merits rejecting the negotiated disposition because it does not stipulate, and thus its sanction does not account for, a misappropriation charge. We disagree. Negotiated discipline may generally omit to charge a violation if, after reasonable factual investigation, there is a substantial risk that ODC would not be able to establish the violation by clear and convincing evidence. Such a risk can arise not only from uncertainty about the facts but also from uncertainty about unresolved legal issues that would have to be decided in order to establish a violation. Here, given the facts and our case law at the time of the offense, it is unclear that ODC could support a misappropriation charge with clear and convincing evidence. Therefore, the failure of ODC to include a stipulated charge of misappropriation does not require rejection of the negotiated disposition in this case.

### 1. When a Negotiated Disposition Must Stipulate a Specific Charge

We judge a negotiated disposition's sanctions by considering, among other things, what sanctions would be appropriate in a contested case. *See In re Mensah*, 262 A.3d 1100, 1104 (D.C. 2021) (per curiam) ("[S]anctions in negotiated-discipline cases may [not] become completely unmoored from the sanctions that would be appropriate in contested-discipline cases."). A negotiated sanction's appropriateness depends in part on the severity of the offenses an attorney could have been charged with and sanctioned for in a contested case. *See In re Agwumezie*, 268 A.3d 823, 825 n.1 (D.C. 2022) (per curiam) ("[T]he nature and seriousness of the misconduct must be considered when determining whether the proposed sanction is justified."); *In re Johnson*, 984 A.2d 176, 181 (D.C. 2009) (per curiam) (explaining that a Hearing Committee's review of a negotiated disposition's sanction may give "some consideration" to "what charges might have been brought"). Therefore, our review of a negotiated disposition's sanction requires us to compare the petition for negotiated discipline's stipulated charges with what could be charged and proven in a contested case.

The Board and ODC agree that ODC can assess litigation risks vis-à-vis what would happen in a contested case when determining which charges to stipulate. Those litigation risks could include legal or factual uncertainties in the case. The parties disagree, however, about the standard governing when ODC

considers whether to stipulate a charge. The Board advances a probable cause standard, which governs the "charging stage" of the disciplinary process. ODC, on the other hand, contends it must have "clear and convincing evidence" of the charge in order to stipulate it.

The clear-and-convincing-evidence standard governs. As explained above, we evaluate the stipulated charges in negotiated discipline cases by asking whether a charge would succeed in a contested case, not whether it could be charged. After all, "under the negotiated-discipline process, the test is whether the agreed-upon *sanction* is justified." *Mensah*, 262 A.3d at 1104 (emphasis added) (internal quotation marks omitted). The sanction in a contested case depends on charges that are proven by clear and convincing evidence. *See In re Mitchell*, 727 A.2d 308, 313 (D.C. 1999) ("It is [ODC's] burden to establish by clear and convincing evidence that respondent violated the Rules of Professional Conduct."); *Harris-Lindsey*, 242 A.3d at 620 ("To prove misappropriation, [ODC] bears the burden of establishing each element by clear and convincing evidence."). Therefore, negotiated discipline may generally omit to charge a violation if, after reasonable factual investigation, there is a substantial risk that ODC would not be able to establish the violation by clear and convincing evidence. Such a risk can arise not only from uncertainty about the facts but also from uncertainty about unresolved legal issues that would have to be decided in order to establish a violation.

It is worth emphasizing that stipulating a specific charge does not compel a specific sanction. As *Mensah* explains, "the negotiated-discipline process necessarily contemplates some additional flexibility in determining an appropriate sanction." 262 A.3d at 1104. That case illustrates ODC's leeway in negotiating the sanction for the charges that ODC must stipulate in the circumstances discussed above. *See id.* at 1104-05. In *Mensah*, a petition for negotiated-discipline stipulated a charge of reckless misappropriation, which in a contested case would require disbarment absent extraordinary circumstances. *Id.* at 1101-02 (citing *In re Addams*, 579 A.2d 190, 191 (D.C. 1990) (en banc)). However, we approved a lesser sanction than disbarment because the sanction was imposed in the more flexible negotiated-discipline process. *Id.* at 1105. Thus, even if a charge would succeed in a contested case, the sanction for that charge in a negotiated-discipline case need not mirror the sanction in a contested case.

In sum, we will not reject a negotiated discipline because it declines to stipulate a violation if, after reasonable factual investigation, there is a substantial risk that ODC would not be able to establish the violation by clear and convincing evidence. Conversely, we will reject a negotiated discipline if ODC does not stipulate a charge that clear and convincing evidence, as set forth in the stipulated facts, supports. In that latter scenario, the failure to stipulate the charge results in a sanction that is not justified and therefore may be unduly lenient.

## 2. Litigation Risks Justified Omitting Misappropriation

We now apply this standard to respondent's negotiated discipline. ODC gives several reasons why it did not stipulate a misappropriation charge. Without addressing every reason ODC provided, we conclude that, on these facts, litigation risks from three unsettled legal questions about misappropriation justified omitting a misappropriation charge. These risks could reasonably lead ODC to conclude, based on its reasonable investigation of the alleged misconduct, that it lacked clear and convincing evidence of misappropriation.[4] We therefore decline to reject the petition for negotiated discipline because of its finding that misappropriation did not occur.

Before addressing those three unsettled questions, we briefly summarize our misappropriation law. "The three elements of misappropriation are (1) that client funds were entrusted to the attorney; (2) that the attorney used those funds for the attorney's own purposes; and (3) that such use was unauthorized." *Harris-Lindsey*, 242 A.3d at 620. The attorney need not "derive[] any personal gain or benefit" from the unauthorized use. *Id.* (quoting *In re Abbey*, 169 A.3d 865, 872 (D.C.

---

[4] Neither party suggests that we owe deference to ODC's views about what charges can or cannot be proved by clear and convincing evidence, and we need not reach the issue of whether any such deference is owed. ODC's reasons for omitting certain charges from a petition are subject to discretionary review by the Hearing Committee and to this court's requests for further information, if necessary. *See* D.C. Bar R. XI, § 12.1(c)-(d).

2017)). Rather, we have explained that "[a]n attorney commits misappropriation when the balance of the attorney's account holding client funds drops below the amount the attorney owes to the client and/or owes to third parties on the client's behalf." *In re Ekekwe-Kauffman*, 267 A.3d 1074, 1080 (D.C. 2022). Beyond these established principles, there are three legal uncertainties about misappropriation (one of which has been resolved since respondent's misconduct occurred) that create litigation risks here. We do not resolve these uncertainties but merely highlight the litigation risks they raise.

**i.**

First, our case law is unsettled on whether culpability is an element of misappropriation. We essentially said as much in our recent decision in *In re Krame*, 284 A.3d 745 (D.C. 2022). That opinion expressly declined to respond to an argument "that a culpable state of mind is *not* an element of misappropriation," which would make misappropriation a per se offense. *Id.* at 750 (internal quotation marks omitted). Instead, we explained that "[t]his court has suggested that misappropriation is 'essentially a *per se* offense,' but we have never sustained a Rule 1.15(a) charge absent some finding of a culpable mindset at least rising to the level of negligence. . . . Th[at] question[] remain[s] for another day . . . ." *Id.* at 767 n.11 (citations omitted).

This explanation in *Krame* cuts against the Board's reliance on cases stating that misappropriation occurs "when the balance of the attorney's account holding client funds drops below the amount the attorney owes" to a client or third party for the proposition that no culpable mental state is required. *Ekekwe-Kauffman*, 267 A.3d at 1080; *see, e.g.*, *In re Bailey*, 883 A.2d 106, 121 (D.C. 2005). For example, the *Ekekwe-Kauffman* court concluded that "the[] misappropriations crossed the line from negligent to at least reckless"—meaning that they involved culpable conduct. 267 A.3d at 1083. So too in *Bailey*, where this court suspended an attorney after determining that his "misappropriation was negligent, rather than intentional or reckless." 883 A.2d at 123. The misappropriation in those cases involved culpable mindsets, even if the cases considered the level of culpability separately from the issue of whether misappropriation occurred. Further, our cases sometimes define one element of misappropriation as an attorney using funds "for the attorney's own purposes." *Harris-Lindsey*, 242 A.3d at 620; *e.g.*, *In re Travers*, 764 A.2d 242, 250 (D.C. 2000). The phrasing of this element may imply that misappropriation requires some level of culpability.

All of this demonstrates the uncertainty around whether misappropriation requires a culpable mindset. Here, this uncertainty created litigation risks given the limited information about respondent's state of mind in the stipulated facts. The Board even acknowledged that respondent's culpability is unclear—it asked us

to remand for further factual finding on that very question. The legal uncertainty of whether misappropriation requires culpability, paired with the factual uncertainty surrounding respondent's culpability, created litigation risks that helped justify ODC's decision not to stipulate a misappropriation charge in respondent's negotiated discipline.

## ii.

The second legal uncertainty is that, when the misconduct occurred in 2018, it was an open question whether a joint signatory (like respondent) could be "entrusted" with estate funds. *See Harris-Lindsey*, 242 A.3d at 620. We since resolved that question in 2020 in *Harris-Lindsey*, clarifying for the first time that an attorney who is a joint signatory on an account is "entrusted" with estate funds. *Id.* at 620, 624-25. This holding only applies prospectively. *Id.* at 624-25. Thus, because respondent was a joint signatory (both his and Morgan's signatures were required on the trust account's checks) when he disbursed the money in the estate's account, it was unsettled whether he was entrusted with client funds such that he could commit misappropriation. This unanswered question raised litigation risks that further assure us that a misappropriation charge may not have succeeded in a contested case.

The Board attempts to distinguish *Harris-Lindsey*, but it is unclear if that distinction makes a difference. The attorney in *Harris-Lindsey* owed no fiduciary duty to the estate because she merely represented a client who was an estate's fiduciary. *See id.* at 617. By contrast, respondent owed a fiduciary duty to the estate as its personal representative.[5] Notably, our misappropriation case law does not specify whether a joint signatory's fiduciary duty to an estate establishes that the joint signatory is "entrusted" with the estate's funds. That there is no clear answer to this question further demonstrates the litigation risks surrounding respondent's joint-signatory status.

### iii.

Finally, our case law leaves unsettled whether court-approved disbursements such as respondent's can be "unauthorized" under our misappropriation precedents. "'[U]nauthorized use' of funds can be established by proving either that the client did not consent to the attorney's use of the funds, or, regardless of whether there is client consent, that the funds or assets were accessed without required advance approval by a court." *Id.* at 624. Using more money than a court approves also constitutes unauthorized use. *See In re Pye*, 57 A.3d 960, 969-70

---

[5] *See In re Estate of Green*, 912 A.2d 1198, 1209 (D.C. 2006) ("In the District of Columbia, '[a] personal representative owes a fiduciary duty to the estate and its beneficiaries.'" (alteration in original) (quoting *In re Estate of Hines*, 715 A.2d 116, 119 (D.C. 1998))).

(D.C. 2012) (per curiam) (adopting appended Board report). But we have never held that court-approved disbursements that cause an entrusted account to dip below the amount owed to clients and third parties are "unauthorized."[6] Even the Board recognizes that "[t]his appears to be a question of first impression." This unanswered legal question generated additional litigation risks given that the probate court approved respondent's disbursements that prompted this case.[7]

***

In conclusion, litigation risks made it uncertain whether a misappropriation charge against respondent could be proven in a contested case by clear and convincing evidence. Because of this uncertainty, we will not reject respondent's negotiated discipline for not stipulating a charge of misappropriation.

---

[6] Contrary to the Board's assertion, *In re Krame* does not help answer this question. *Krame* does not involve a court approving a payment that exceeded the amount of funds in an account or the amount due to an attorney. 284 A.3d at 765-66. Rather, Mr. Krame paid himself twice for the same work—first when he submitted his fee petition to the probate court and then again when the court approved that petition. *Id.* Thus, the probate court in *Krame* did not approve the double payment; it approved one payment that the attorney paid himself twice. *Id.* Therefore, in *Krame*, the probate court did not approve the payment that constituted misappropriation, whereas here the probate court did approve the payment that, per the Board, constituted misappropriation.

[7] A further wrinkle in this case compounds the uncertainty. The probate court approved respondent's disbursements based on his mistaken representation that the account had enough funds to cover the disbursements. Thus, even if court approval of a payment generally precludes it from being "unauthorized," another question remains of whether the court can "authorize" a payment premised on mistaken information.

## B. The Sanction is Justified and Not Unduly Lenient

Having accepted the negotiated discipline's decision not to stipulate a misappropriation charge, we agree that the proposed sanction for respondent's record-keeping violation is "justified and not unduly lenient." *Mensah*, 262 A.3d at 1102. Respondent's sanction—a 30-day suspension with proof of fitness for reinstatement, stayed in favor of one year of probation with conditions—is "consistent with the discipline imposed in comparable cases." *In re Robbins*, 192 A.3d 558, 567 (D.C. 2018) (per curiam); *see, e.g.*, *In re Ukwu*, 712 A.2d 502, 503 (D.C. 1998) (per curiam) (30-day suspension, suspended in favor of probation with conditions); *In re Toppelberg*, 906 A.2d 881, 882 (D.C. 2006) (per curiam) (60-day suspension, 30 days stayed in favor of training). Accordingly, it is

ORDERED that respondent George A. Teitelbaum is hereby suspended from the practice of law in the District of Columbia for 30 days, stayed in favor of one year of unsupervised probation, with the following conditions:

(i)     that Respondent not be the subject of a disciplinary complaint that results in a finding that he violated the ethics rules of any jurisdiction in which he is licensed to practice during the probationary period;

(ii)    that Respondent will notify ODC promptly of any disciplinary complaint filed against him and its disposition;

(iii)   that Respondent will consult with the D.C. Bar's Practice Management Advisory Service to conduct a review of his practices around the handling of entrusted funds, and waive confidentiality regarding all aspects of the review and any follow-up, including measurement of the success of corrective measures taken;

(iv) that Respondent will submit to ODC the results of his successful completion of corrective measures at least 90 days before his probation expires, including descriptions of steps implemented and training materials used; and

(v) that Respondent need not show fitness, provided that he successfully completes probation.

*So ordered.*